## COLLINS vs. THE ALBANY AND SCHENECTADY RAILROAD COMPANY.

It is a well settled rule of law, that in actions for the recovery of damages for injuries to the person, the jury must be satisfied from the evidence, not only that the defendant (or his agent) was guilty of negligence, but that the plaintiff himself was free from fault.

And where, in an action for damages sustained in consequence of a collision of cars upon a railroad, the proof is that the plaintiff, at the time of the accident, left his seat in the car and went onto the platform, and was the only person injured, but the jury find, as a fact in the case, that the plaintiff was entirely free from negligence, this being a question within their province to decide, the court will not set aside the verdict as being against the weight of evidence.

The right of the court to interfere with the verdict, when the damages found by the jury are clearly excessive, although it has always been cautiously exercised, has never been denied.   Such a right is absolutely necessary to the safe administration of justice, and ought, in all proper cases, to be asserted and exercised.

In all the class of actions for personal injuries, damages are not to be weighed in a very delicate scale ; and it is not enough to warrant the court in granting a new trial that it would have preferred a different admeasurement of damages.

But when the damages found by the jury are either so *large*, or so *small*, as to force upon the mind of every man familiar with the circumstances of the case, the conviction that, by some means, the jury have acted under the influence of a perverted judgment, it is the duty of the court, in the exercise of a sound judicial discretion, to grant a new trial.

A verdict for damages occasioned by an accident on a railroad, of more than double the amount which could, by law, have been awarded if the accident had proved fatal to the plaintiff, presents a proper case for the interference of the court.

So *held* where the damages recovered, in a case of no peculiar aggravation, or gross negligence on the part of the defendants, were $11,000.

There is no objection, in principle, to the adoption, in actions of tort, of the same practice which is pursued in actions of contract ; of allowing the party in whose favor the verdict has been given, to elect, if he will, to remit a portion of the damages, instead of the court awarding a new trial, absolutely.

And in such case, the proper order will be, to deny the motion for a new trial, if within the time appointed by the court for that purpose, a stipulation is given by the party in whose favor the verdict has been rendered, to reduce it to the amount deemed by the court to be reasonable and proper ; and if such stipulation be not given, that a new trial be awarded upon payment of costs.

Collins *v.* Albany and Schenectady Railroad Co.

THIS was an action to recover damages for the injury sustained by the plaintiff, in consequence of a collision upon the defendants' road. It was tried at the Albany circuit, in March, 1850, before Mr. Justice Parker. It appeared upon the trial, that on the morning of the 3d of November, 1848, two trains of passenger cars left Albany for Schenectady. The second train left a short time after the first. There were two passenger cars in each train. The plaintiff was in the forward passenger car of the first train. After this train had proceeded about ten miles, it stopped. An eccentric strap had been put upon the engine the night before, and having been screwed a little too tight, it became heated, and it was necessary to loosen it. At the time the train was stopped for this purpose, the second train was about a mile and a half behind. While the forward train was thus standing still, the plaintiff left his seat and went to the rear of the car, as if to go out, and just as he had reached the platform, the engine of the second train struck the rear car, with such force as to break three platforms. The plaintiff was injured upon the head, but the principal wound was upon his foot. That was so badly injured that it became necessary to remove the outside of the foot and one toe. The plaintiff became so seriously ill, that, for several days, his life was despaired of. He remained at Schenectady about three months before he could be removed home. The foot was not entirely cured when he left. He was crippled for life. All the expenses of the plaintiff and his family, while at Schenectady, were paid by the defendants. There was no exception to the charge of the judge, or to any decision made upon the trial. The jury rendered a verdict for the plaintiff for $11,000. The defendants moved for a new trial, on the ground that, even if there was a want of due care on their part, the plaintiff himself was shown to have been also guilty of negligence, and upon the further ground that the damages were excessive.

*J. A. Spencer*, for the plaintiff.

*M. T. Reynolds*, for the defendants.

Collins *v.* Albany and Schenectady Railroad Co.

*By the Court,* HARRIS, J.   The charge of the judge, upon the trial, is not even stated in the case.   It is, therefore, to be inferred, that the law, applicable to the case, was properly stated to the jury, and that they were instructed that, to entitle the plaintiff to recover, they must be satisfied from the evidence, not only that the defendants' agents were guilty of negligence, but also that the plaintiff himself was free from fault.   No rule of law is more firmly settled than this.   Perhaps no rule has been more uniformly presented by judges at the circuit, for the guidance of the jury in trials like that in question.   Yet experience has shown, that so much of the rule as requires that the party injured should himself be found to have been free from all negligence, has not always been regarded.   Juries are inclined, and it is not strange that it should be so, when they find that one party has been guilty of carelessness, and that another has been injured by such carelessness, to overlook the question, whether the injured party is wholly faultless himself.   Hence it is, that in cases of this description, the plaintiff frequently recovers, when, if the sole question upon trial had been whether the plaintiff had been chargeable with carelessness, in any degree, the decision must have been against him.   In this very case, when we remember that most of the injuries which have happened to railroad passengers, have occurred when they were upon the platform, we can not regard it as altogether prudent for the plaintiff, at the very time when a collision was apprehended, to have left his seat and hastened to that position, even though it had been for the purpose of escaping from the car.   And yet the jury, fixing their attention upon what seemed to them the more immediate cause of the disaster, have found as a fact in the case, that the plaintiff was entirely free from negligence.   For we are to presume that this question was properly submitted to them.   And perhaps, after all, the jury were right in their conclusion that the mere act of leaving his seat and going to the platform, under the circumstances described in the case, did not amount to negligence on the part of the plaintiff.   At any rate, it being a question within the province of the jury to decide, the evidence of a violation of ordinary prudence by

Collins v. Albany and Schenectady Railroad Co.

the plaintiff is not so clear and preponderating as to justify the court in holding that the verdict is against the weight of evidence. (*Eaton* v. *Benton*, 2 *Hill*, 576. *Keeler* v. *The Firemens' Ins. Company of the City of Albany*, 3 *Id.* 250.)

It remains to inquire whether the verdict is so large as to call upon the court to interfere on the ground that it is *excessive*. The right of the court thus to interfere, when the damages found by the jury are clearly excessive, though it has always been cautiously exercised, has never been denied. Such a right is absolutely necessary to the safe administration of justice, and ought, in all proper cases, to be asserted and exercised.

It is the peculiar province of a jury to assess damages, and where, as in actions sounding in damages merely, the law furnishes no legal rule of admeasurement, it is very rare indeed, that a court will feel itself justified in setting aside a verdict, merely for excess. It is not enough, that, in the opinion of the court, the damages are too high. It may not, rightfully, substitute its own sense of what would be a reasonable compensation for the injury, for that of the jury. On the other hand, a jury must not be allowed to exercise despotic power. As they partake of the common infirmities of humanity, they are liable, occasionally, to exceed the bounds of sober judgment, though such instances, at the present day at least, are extremely rare. When they do occur, it is the unquestionable duty of the court to interfere, not by substituting its own judgment for that of a jury, but by ordering the case to be submitted to another jury.

The great difficulty in such cases is, to determine to what degree the damages must be deemed excessive, in order to call for the exercise of this correcting power by the court. In actions, involving moral delinquency on the part of the defendant, examples are very rare, in which the damages have been found to be so excessive as to induce the court to order a second trial. In such cases, other elements besides mere compensation for the injury sustained by the plaintiff, may properly enter into the verdict. The jury are allowed, and even advised to consider what the interests of society, as well as justice to the plaintiff, requires; and by their verdict, to punish the offender as well

as make compensation for the injury. In these cases, unless the verdict is so extravagant as to excite a suspicion that the jury have been controlled by improper influences, the court will not interfere. The damages must be what some of the judges have called "outrageously excessive," before a new trial will be awarded on this ground. "The damages," says Kent, Ch. J., in *Coleman* v. *Southwick*, (9 *John.* 45,) "must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court can not undertake to draw the line; for they have no standard by which to ascertain the excess." (*See also Southwick,* v. *Stevens,* 10 *John.* 443; *Sargent* v. *Denniston,* 5 *Cowen,* 118.) "The law," says Graham, "favors the presumption that the jury are actuated by pure motives. It therefore makes every allowance for different dispositions, capacities, views, and even frailties, in the examination of heterogeneous matters of fact, where no criterion can be supplied; and it is not until the result of the deliberations of the jury appears in a form calculated to shock the understanding, and impress no dubious conviction of their prejudice and passion, that courts have felt themselves compelled to interfere." (*Graham on New Trials,* 452.) In *Hewlett* v. *Crouchley,* (5 *Taunt.* 280, 281,) Mansfield, Ch. J. said; "I always have felt, that it is extremely difficult to interfere and say when damages are too large." "You may take twenty juries, and every one of them will differ from £2000 to £200." "Nevertheless, it is now well acknowledged, in all the courts of *Westminster Hall,* that whether in actions for criminal conversation, malicious prosecution, words, or any other matter, if the damages are clearly too large, the courts will send the inquiry to another jury.

The question still returns, when is a verdict *so large* as to call upon the court, in the exercise of its discretion, to send it back for the consideration of a second jury? A reference to some of the cases in which courts have thus interfered, may

aid in the solution of the inquiry. *McConnell* v. *Hampton,* (12 *John.* 234,) was an action for assault and battery and false imprisonment. The defendant was the commander of the army of the United States, at Burlington. The plaintiff came to him to make some communication relative to the enemy, when the defendant had him arrested and confined in the guard house from Tuesday until Sunday. The defendant was a man of education, and had a yearly income of $60,000. The jury gave a verdict of $9000. Thompson, Ch. J. in delivering the opinion of the court, upon a motion for a new trial, said, (p. 236,) "To refuse a new trial in this case would, in effect, be saying, that a new trial ought never to be granted in actions of this description. Although the defendant is a man of very large fortune, the plaintiff's injury is not thereby enhanced. And, under all the circumstances, I am inclined to think it will be a discreet exercise of the power of granting new trials, to send this cause back for the consideration of another jury."

In *Chambers* v. *Robinson,* (1 *Strange,* 691,) the defendant had procured the plaintiff to be indicted for perjury. In an action for malicious prosecution, the jury gave a verdict for the plaintiff for £1000. Upon a motion for a new trial, on account of the excessiveness of the damages, the court said it was but reasonable that the defendant should try another jury, before he was finally charged with £1000. A second trial was had and the same verdict given. The court refused to grant a third trial. In *Price* v. *Severn,* (7 *Bing.* 316,) the plaintiff had a verdict in an action for false imprisonment for £100. In granting a new trial on the ground that the damages were excessive, Tindal, Ch. J. said, "I am as little disposed as any man to interfere with the province of a jury, and I should not be induced to send a case down again for excessive damages, except where those damages are enormous and disproportionate. I consider them such in this case." "The case, therefore, must go before another jury." (Page 318, 319.)

*Nettle* v. *Harrison,* (2 *McCord,* 230,) was an action of slander. There was a verdict for $5000. Upon a motion for a new trial, Nott, J. said, "I think the jury have been induced

to give a verdict which perhaps their more deliberate judgment would not approve. It is a proper case therefore, to go back to another jury."

In *Wiggins* v. *Coffin*, (3 *Story's Rep.* 1,) the jury gave a verdict of $1500, in an action for malicious prosecution. A new trial was granted, on the ground that the damages were excessive. Judge Story said, it was a case for such compensation in damages as might fairly be allowed for the injury done to the plaintiff, and for his expenses incurred in the vindication of his character from the accusation. But as the defendant had freely admitted at the trial the entire innocence of the plaintiff, it was not a case for vindictive damages. The jury had mistaken their proper duty and gone far beyond what the facts and the law would justify. The same distinguished judge, in considering a motion for a new trial, on the ground that the verdict was excessive, in another case, has stated the principle by which courts are governed in deciding upon such applications, with admirable clearness. "In no case," he says, "will the court ask itself, whether, if it had been substituted in the stead of the jury, it would have given precisely the same damages; but the court will simply consider, whether the verdict is fair and reasonable, and in the exercise of sound discretion, under all the circumstances of the case; and it will be deemed so, unless the verdict is so excessive or outrageous, with reference to those circumstances, as to demonstrate, that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice, to mislead them." (*Whipple* v. *The Cumberland Manufacturing Company*, 2 *Story's Rep.* 670, 671.) *Diblin* v. *Murphy*, (3 *Sandf. S. C. Rep.* 19,) was, like that under consideration, an action to recover damages for personal injury sustained by reason of the defendant's negligence. The plaintiff, while crossing a street in the city of New-York, was knocked down and run over by the defendant's omnibus. Her right arm was fractured in two places. She was laid up for nine weeks, and it was proved that she was not likely ever again to recover the full use of the arm. The jury gave a verdict of $1500. Oakley, Ch. J. said, (pp, 20, 21,)

" There was nothing to show an aggravated case against the driver ; and there was evidence on both sides as to the point whether the driver was guilty of negligence, or whether the occurrence was owing to the plaintiff's own carelessness. We are satisfied that the verdict ought to have been considerably less ; and the amount is so much more than it should have been, as to indicate either passion or prejudice on the part of the jury. It is a case, therefore, where we feel compelled to interfere with the verdict, and to set it aside as excessive, unless some other remedy may be adopted." (*See also Krom* v. *Schoonmaker*, 3 *Barb. S. C. Rep.* 647.) .

In *Armytage* v. *Haley*, (4 *Ad. & Ellis' N. R.* 917, 4 *Queen's Bench Rep.*) the action was also brought to recover damages for an injury caused by the negligence of the defendant's servant in driving his omnibus against the defendant. On the trial the negligence was proved, and it appeared that the plaintiff's thigh was broken, and considerable expense was incurred for the attendance of a surgeon, who also testified that it was doubtful whether the plaintiff would not always be lame. The jury gave a verdict of *one farthing* damages. Lord Denman, Ch. J. said : " The cases cited for the defendant were actions, not for injury to the person, but, principally, for slander. There ought to be a new trial here, on payment of costs."

This review of some of the leading cases in which new trials have been granted, on the ground of excessive damages, will show, I think, that if, in this case, the court should direct that it be submitted to another jury, it would be sustained by abundant precedent. I admit, that in all this class of actions, damages are not to be weighed in a very delicate scale, and that it is not enough to warrant the court in granting a new trial, that it would have preferred a different admeasurement of damages. But when the damages found by the jury are either *so large*, or *so small*, as to force upon the mind of every man familiar with the circumstances of the case, the conviction that, by some means, the jury have acted under the influence of a perverted judgment, it is the duty of the court, in the exercise of a sound judicial discretion, to grant a new trial.

The case in hand, in my judgment, is pre-eminently a fit case for the exercise of this power. It is true, that the plaintiff was very badly injured. He suffered greatly as the consequence, and it may well be apprehended that even his life was shortened by the disaster; for since the argument of this motion he has died. But the agents of the defendants, though the jury have found them guilty of negligence, and perhaps the evidence was sufficient to warrant such finding, were not chargeable with any intentional wrong; or, indeed, with any very gross negligence. The plaintiff himself, whether free from fault or not, did, in fact, contribute to his own sad misfortune. All the other passengers escaped wholly uninjured. He, too, would have been unhurt had he not left his seat and hastened to the platform just at the moment of the collision. The damages which, under these circumstances, the jury have seen fit to award to the plaintiff, are more than twice as much as could have been awarded, if the accident had proved fatal to the plaintiff. The legislature, apprehending that occurrences like that which is the foundation of this action, might, when the action should be brought by the surviving friends of one whose life was destroyed, so far operate upon the sympathies of the jury as to swerve them from the exercise of their ordinary sober judgment, has limited the recovery in such cases to $5000. There is certainly great plausibility in the argument that the defendants ought not to be liable for a greater amount of damages in this case than they would have been, if the plaintiff had actually lost his life.

Upon the whole, and after a very careful consideration of all the circumstances of the case, I am of the opinion that this verdict ought not to be allowed to stand, unless the representatives of the plaintiff shall see fit to reduce the amount to such a sum as will obviate the objection that the damages are excessive

It is undoubtedly a proper case for allowing those who represent the plaintiff to elect, if they will, to remit a portion of the damages, instead of awarding a new trial absolutely. This is often done in actions upon contracts, where the recovery has been too large, and I can see no objection in principle, to the adoption of the same practice, in actions for torts. Such a

Collins *v.* Albany and Schenectady Railroad Co.

practice is not without precedent. In *Blunt* v. *Little*, (3 *Mason*, 102,) the action was for malicious prosecution, and the plaintiff recovered a verdict for $2000. Judge Story, before whom the case was tried, upon a motion for a new trial on the ground that the damages were excessive, said, (*page* 107,) "It appeared to me at the trial, a strong case for damages ; at the same time, I should have been better satisfied, if the damages had been more moderate. I have the greatest hesitation in interfering with a verdict, and in so doing, I believe that I go to the very limits of the law. After full reflection, I am of opinion, that it is reasonable that the cause should be submitted to another jury, unless the plaintiff is willing to remit $500 of his damages. If he does, the court ought not to interfere further." In *Diblin* v. *Murphy*, above cited, the court made an order setting aside the verdict, on payment of costs, unless the plaintiff, within ten days, would stipulate to reduce the verdict from $1500 to $600. So, in *Armytage* v. *Haley*, also above cited, the verdict being for one farthing damages, the court made an order for a new trial, unless the defendant would consent to *increase* the damages to the amount of the surgeon's bill.

I think the proper order in this case is, to deny the motion for a new trial, if within twenty days a stipulation is given to reduce the verdict to $5000. And if such stipulation is not given, that a new trial be awarded upon payment of costs.

[ALBANY GENERAL TERM, February 2, 1852. *Parker, Wright* and *Harris*, Justices.]