MURRAY *vs.* THE HUDSON RIVER RAILROAD COMPANY.

The plaintiff, who was by trade a cooper, and by occupation a driver or teamster in the employ of M., a brewer, received personal injuries, resulting in the loss of a hand, while crossing a ferry owned by the defendant, in consequence, as claimed, of the negligence of the defendant or its servants. For these injuries he recovered a verdict for $8000. The injuries occurred under circumstances not wholly free from doubt, both as to the plaintiff's own negligence having contributed to the injury, and as to the propriety of his availing himself of the ferry. There was very little evidence as to the plaintiff's former or present capacity for labor, and none as to the amount of his ordinary wages or earnings, either before or since the accident; or as to the extent of his bodily suffering; or to show that he was not now in good health. Nor did it appear how long he was laid up and absolutely incapacitated for labor; nor what was the amount of his medical or other expenses; but it did appear he had recovered so far as to be able to walk about. *Held* that the verdict should be set aside, for excessiveness of damages, and a new trial be granted, unless the plaintiff would consent to reduce such damages to the sum of $6000.

THIS is an appeal, by the defendant, from a judgment in favor of the plaintiff, on a verdict for $8000. The action was brought to recover damages for injuries alleged to have been received by the plaintiff, by the negligence of the

defendant, and came on for trial at the Albany circuit, in February, 1866, before Mr. Justice MILLER and a jury, and on the trial the following case was made : The defendant is the owner of a ferry at Albany, which was used in connection with its railroad in the transportation of passengers and freight across the Hudson river. On the 22d of August, 1865, the plaintiff was in the employ of McKnight, a brewer of Albany, and had occasion to cross the river, for McKnight, with a horse and wagon, for the purpose of delivering beer to several parties in Greenbush. He was also, as he testified, to go for empty casks at the Hudson river and Boston railroad depots in East Albany. He first thought to cross the river by the Boston railroad ferry, *as it made no difference by which ferry he passed over.* It was in the afternoon, and the ferry boat of the defendant, loaded with passengers, was about starting across the river for the train for New York. The plaintiff first stopped at the Boston ferry, and then started for the Hudson river. The plaintiff was driving, and had a man in the wagon with him. The ferry boat was at the bridge. The plaintiff drove to the mouth of the bridge and stopped, as the bell of the boat rang. The plaintiff says he then saw the pilot of the boat beckoning for him to come on, and he heard some of the deck hands call to him to "hurry up." He then hit his horse with a rope to hurry him on. The bridge was about 65 to 75 feet long. As the plaintiff neared the boat, the apron of the bridge was thrown up and the boat started off, and the plaintiff, horse and wagon, went into the water. The man in the wagon with the plaintiff jumped out. The plaintiff's left hand was injured, and was amputated at the wrist.

The principal question made on the trial, was whether the plaintiff was not negligent, by reason of which the injury was occasioned, and it was claimed that he had no business which entitled him to cross the river on the defendant's boat. The claim of business with the road was, that he was going over the river under instructions to look for empty barrels for

McKnight, at the defendant's depot. At this time there were no empty barrels of McKight at the depot, and there is a dispute upon the evidence whether there was any reason to suspect that any empty barrels were then at the depot, as no empty barrels had come during the summer to be delivered to McKnight. The plaintiff had nothing to deliver at the road, and never had delivered any thing to it, for transportation, and he had not crossed the railroad ferry to deliver beer during that summer.

As to the question whether the plaintiff, by proper care, could have escaped injury, the evidence of the plaintiff shows that at the mouth of the bridge he struck his horse with a rope. The bridge was descending toward the boat. Before he reached the boat the apron of the bridge was raised, the boat left the dock, and the plaintiff and horse and wagon went into the water. The plaintiff says he tried to stop the horse, but could not. *The horse trotted down* the bridge a part of the way. He made no effort to turn the horse one side, against the timbers. To show that the horse might have been controlled, and stopped, it was shown that he did come to a halt at about the middle of the bridge. The defendant claimed that if he could not stop the horse, it was because he was driving too fast; and if he was driving slow and might have stopped, by proper management, it was negligence not to do so. The plaintiff claimed that he drove with proper caution, and would have continued at a moderate gait, but for the express instructions of the defendant's agents to hurry on. The plaintiff was a cooper, but had not lately followed that occupation, but was employed by McKnight the brewer. The accident occurred on the 22d of August, 1865, and the cause was tried on the 15th of February, 1866. The plaintiff says he was laid up for some time, and had been unable to do much, almost all the time since the accident. He was a kind of agent for McKnight, had a family, wife, mother and four children. He had been able to be walking around for some time, and was not confined long by the acci-

cident. There was no evidence as to how much the plaintiff could earn by his labor, before the accident, nor the extent to which his capacity for labor was affected by the loss of his hand, nor was there any evidence as to the extent of his bodily suffering. The jury found a verdict for the plaintiff, of *eight thousand dollars.*

*A. J. Parker,* for the respondent.

*J. H. Reynolds,* for the appellant.

*By the Court,* HOGEBOOM, J. Three questions are made in this case, on which the reversal of the judgment is sought.

1. That the plaintiff had no business at the defendant's depot, at East Albany, and hence no right to cross at the defendant's ferry ; and that his statement of having such business was a false pretense.

I think there was enough to go to the jury, on this question, and therefore enough to justify the refusal of a nonsuit on that ground. And we must presume, in the absence of evidence to the contrary, that this question was finally submitted to the jury under proper instructions. I think there was evidence enough to sustain the verdict.

2. That the negligence of the plaintiff concurred to produce the injury complained of. The same answer must be made to this proposition. It was a question for the jury; and their verdict is sustainable upon the evidence. The plaintiff had a right to urge various aspects of the case to the jury. He had a right to urge that if he drove *slow,* it was because he apprehended danger and wished to exercise proper caution ; and if he drove *fast,* it was because he was invited and urged to do so by the defendant's agents, and resorted to that course, ultimately, as the only means of safety. On this point, it seems to me to have been just one of those cases which required a submission to the jury, on the facts, and which could be more safely disposed of in the exercise of

proper discretion and intelligence by the court which conducted the trial, than by the court which sits in review of their proceedings.

3. On the other question—that the damages are excessive—I have more difficulty. I was at first doubtful whether this question properly arose, but as counsel agree that it was presented at the circuit, and may be considered here, I shall proceed to discuss it. And on the whole, I am of opinion that there should be a new trial, unless the plaintiff will consent to reduce the damages to the proper standard. The plaintiff, by trade a cooper, and by occupation a driver or teamster in the employ of Mr. McKnight, a brewer, met with this unfortunate accident of losing his hand, under circumstances not wholly free from doubt, both as to his own negligence in contributing to the injury, and as to the propriety of his availing himself of the defendant's ferry, in crossing the river. Very little appears as to his former or present capacity for labor—nothing as to the amount of his ordinary wages or earning, either before or since the accident. He was in McKnight's employ at the time of the trial, as he was at the time of the accident. How long he was laid up and absolutely incapacitated for labor, does not appear; nor the amount of his medical or other expenses. He has lost his left hand, it is true; and it is undeniably a severe loss, and to a laboring man, to some extent an irreparable one. But it does not wholly disqualify him for labor; and many a man in his situation is nevertheless able to support a family, and by the aid of ingenious mechanical contrivances, to make up to some extent the privation he has experienced. He has doubtless undergone much pain and suffering, for which he ought to be compensated. It does not appear that such pain and suffering now continue. And it is therefore very different from the cases of individuals who experience a lifetime of continuous torture, or who, from the nature of their injuries, are deprived of some of their senses, or of the means of locomotion, and are wholly disabled from earning a livelihood

or contributing thereto. I would by no means under estimate the serious injuries which the plaintiff has received; but there have been, and are constantly occurring, more serious ones, for which less damages are awarded. To a few of these I will recur.

In *Price* v. *Severn*, (7 *Bing*. 316,) the plaintiff recovered £100, in an action for false imprisonment, and the court of King's Bench (through Tindal, Ch. J.) awarded a new trial on the ground that the "damages were enormous and disproportionate."

In *Wiggins* v. *Coffin*, (3 *Story's Rep*. 1,) there was a verdict of $1500, in an action for malicious prosecution. A new trial was granted, on the ground that the damages were excessive ; the court saying the jury had mistaken their duty, and gone far beyond what the facts and the law would justify.

In *Diblin* v. *Murphy*, (3 *Sandf. S. C. R*. 19.) which was an action to recover for personal injuries, the plaintiff was knocked down and run over in the street, by the defendant's omnibus, her right arm fractured in two places, and likely to be permanently disabled, and she was laid up for nine weeks. A verdict for $1500 damages was set aside as excessive.

In *Nette* v. *Harrison*, (2 *McCord*, 230,) a verdict of $5000, in an action for slander, was set aside as excessive. So was a verdict of $9000, in an action for assault and battery and false imprisonment, in the case of *McConnell* v. *Hampton*, (12 *John*. 234.)

In *Krom* v. *Schoonmaker*, (3 *Barb*. 647,) the plaintiff recovered $350 in an action for false imprisonment, and the verdict was set aside. It is true, the case was peculiar, and the defendant was charged with being insane at the time he committed the act, and the opinion appears to proceed upon the ground, not that the judge committed any positive error upon the trial, but that he ought to have said some additional things to the jury, which he did not say, (and which he was not asked to say.) But, in reality, the court seemed to have granted the new trial upon the ground that the damages

were *disproportionate to the case;* for there appears to have been no legal error committed.

In *Collins* v. *The Albany and Schenectady R. R. Co.*, (12 *Barb.* 492,) which was an action for personal injuries, the plaintiff was injured upon the head, but principally upon the foot. The outside of the foot and one toe had to be removed. His life was dispaired of, (and after the trial, and before the argument, he died.) He was crippled for life. The jury rendered a verdict for $11,000; and this court, in this district, after an exhaustive review of the cases, set aside the verdict for excessive damages, unless the plaintiff would stipulate to reduce them to $5000.

In *Clapp* v. *The Hudson R. R. Co.*, (19 *Barb.* 461,) the same court set aside a verdict for $6000, for excessiveness of damages, and granted a new trial, unless the plaintiff would stipulate to reduce the damages to $4000. The plaintiff, the keeper of a grocery store and livery stable, was injured by a collision of railroad cars — had the larger (or shin) bone of his leg broken, which produced a curvature and permanent shortening of the leg, and permanently injured it. The court remark, at page 464, " In this case the injury was undoubtedly severe, but it was less serious (than in the *Collins case*, 12 *Barb.* 492, just previously described by the judge,) in its character and consequences. The plaintiff's leg was badly broken, and he of course must have suffered greatly. The evidence shows that the leg is somewhat shortened by the injury, and will probably remain so; yet it also appears that the muscles are well developed, and the plaintiff is restored to his wonted health."

In the light of these cases, and of others which might be cited, I am of opinion that it is our duty, upon the case as it appears to us, to set aside the verdict for excessiveness of damages and grant a new trial, unless the plaintiff will consent to accept a less sum. His injury is, I think, less severe than several of those in which new trials were awarded unless the plaintiffs would stipulate to reduce the damages.

It may be that a certain standard has thus been to some extent established, which should govern our own action. In addition to the other facts before mentioned, there is nothing to show that the plaintiff is not now in good health. The legislature has seen fit, after leaving the matter at large for a while, to limit the damages to $5000, for the pecuniary injuries which the next of kin of a deceased person should recover for his wrongful death. And although this may be, and is to some extent, a different action (and a new cause of action) from that which lies in favor of a party during his lifetime, yet they possess many elements of similarity. The pecuniary injuries would appear to be the same in kind, though not in degree, in both. It would seem that ordinarily, in the case of death, they would much exceed those happening if the party continued in life and comparative health. The pain, suffering, mortification and distress — perhaps the immediate medical and other expenses consequent upon the sickness and confinement of the party injured — are peculiar to the case of the party who survives. They are to be regarded so in this particular case, although there is nothing to show they were great or excessive in degree or amount.

I ought also to mention that in the case of *Hegeman* v. *The Western Railroad Corporation,* (19 *Barb*. 353,) this court, in an action for personal injuries, refused to interfere on the ground that the damages were excessive, although the verdict was for $9900, and that in a case where the court held the defendants not guilty of gross negligence. They say, (*p*. 359,) "But on the other hand, the case shows that the injury sustained by the plaintiff is entirely beyond pecuniary estimate. An artisan, engaged in business, he was confined to his bed for several months, and from the nature of his injuries must have been the subject of extreme pain and suffering. Up to the time of the trial, he had scarcely been able to leave his house, and so permanent are his injuries that it is not probable he will ever again possess the ability

to provide for the support of himself and family. Under such circumstances, it can not be said that the damages awarded by the jury are so excessive as to call for the interference of the court."

This case would therefore seem to have been placed by the court upon its own peculiar circumstances, and not to have been intended to shake the rule laid down in the case of *Collins* and reaffirmed in the case of *Clapp.*

It is impossible to lay down any general rule on this subject; and I shall not attempt it. It appears to me, however, at present, that the damages which may be recovered in actions for personal injuries may, as has already been suggested, be divided into two classes: 1st. Those arising from pain, suffering, distress, anxiety of mind and the immediate medical and other expenses growing out of the sickness and confinement of the party injured. 2d. The permaneut pecuniary loss or injury growing out of total or partial personal disabilty to attend or engage in business. And that it is somewhat doubtful whether, after the definitive expression on the part of the legislature, that they ought not to be recoverable beyond $5000, we ought to permit them to be recovered in actions brought by the party, when we would not in actions brought by the next of kin. This last class of injuries is sustained both by the party who survives, to sue for his own damages, and the next of kin, who sue in case of his decease; only, as it seldom happens, that the survivor is *permanently disabled,* the extent of injury is not ordinarily so great as in case of death. The other class of injuries appears to be alone recoverable by the party himself, in the event of his surviving the injury.

Both classes of injuries apply to the case in hand; but the difficulty is in finding some standard by which to estimate their amount. The evidence does not give it. And the jury seem to have given the rein too largely to loose and indefinite conjecture. This can not be allowed, and in suitable cases should be restrained by the salutary power whose exercise is

here invoked. This does not touch on the proper prerogatives of a jury, because it submits the matter again to their decision, and there is therefore no danger of any encroachment upon their constitutional rights. I think this is the proper course to be pursued on this occasion, but I think it also proper to prescribe a certain amount to which, if the plaintiff consents to reduce the verdict, he shall be saved the expense and contingencies of a new trial. What this amount shall be, is perhaps the most difficult question in the case, and involves the exercise of a power of the most delicate and responsible character. I am inclined to think the sum should not exceed that which would be allowed in the case of death; for although the present action embraces elements of damage which would not enter into the other, I think the amount of pecuniary injury far less than would have resulted from the death of the party injured — so much less that, allowing a fair compensation for all the elements of damage peculiar to the case of a surviving party who brings the action himself, I do not think that, when added to the permanent pecuniary loss, they come up in amount to the statutory standard of damages allowed to the relatives of deceased persons. My preferences are for the sum of $4000; to which sum, if the plaintiff consents to reduce the damages, I think a new trial should be denied; otherwise, that a new trial should be granted, on payment of costs.

My brethren, while they concur in the opinion that the judgment should be reversed unless the plaintiff elects to reduce the damages, are in favor of a larger amount of damages than seems to me to be proper; and, in accordance with their views, the order will be that the judgment of the court below be reversed and a new trial granted, upon payment of costs, unless the plaintiff elects to reduce such damages to the sum of $6000.

Judgment accordingly.

[ALBANY GENERAL TERM May 7, 1866. *Miller, Ingalls* and *Hogeboom,* Justices.]