NORMAN COX, AS EXECUTOR, ETC., OF HENRY PECK, DECEASED, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Action for personal injuries — stipulation that action shall not abate — Measure of damages — excessive damages.*

This action was brought by one Peck to recover damages for injuries sustained by reason of his unlawful expulsion from one of the defendant's cars. While the action was pending, a stipulation was entered into between the parties thereto that, in case of the death of Peck, the action should not abate. Peck died during the pendency of the action, and after a judgment in his favor had been reversed by the General Term. *Held*, that, upon a new trial, his executors were entitled to recover the sum which would have compensated him for his injuries if he were alive, although his estate had not suffered at all by reason of the injury.

The intestate was wrongfully removed from a parlor car, for a refusal to pay his fare, by one of the defendant's conductors, who was acting in good faith.

The only unnecessary violence alleged to have been used consisted in seizing him, while standing upon the ground, and pulling him from the car while he was holding on to the rail by one hand, thereby wrenching him and injuring his finger, so that subsequently a felon appeared, from which he suffered two weeks. The judge charged that compensatory damages only could be allowed. The jury brought in a verdict for $3,000. *Held*, that the verdict was excessive, and should be set aside.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff, and appeal from an' order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action was brought to recover damages for the ejection of plaintiff's testator from defendant's cars. It has been three times tried. On the first trial, the jury rendered a verdict in plaintiff's favor for $8,000. The complaint claimed but $5,000, and judgment was entered for that amount, the plaintiff remitting $3,000 of the verdict. On appeal from this judgment, the General Term set aside the verdict as excessive, imposing costs as a condition. After this, and before a new trial, Henry Peck died, and his executor was substituted, by order entered upon a stipulation made by the defendants, on putting the cause over a term of court before the first trial; the stipulation also providing that the action should not abate with the death of the plaintiff, but any verdict and judgment rendered therein should be regarded as rendered in the lifetime of the plaintiff. After substitution of plaintiff's executor, the action was again tried, and a verdict of $4,000 rendered in plaintiff's favor. The defendants appealed, and the General Term reversed the judgment, denying a new trial upon the ground that the action had abated with the death of Henry Peck. (4 Hun, 176; 6 T. & C., 405.)

The defendants entered judgment upon the order, and the plaintiff appealed. The Court of Appeals reversed the judgment of the General Term, upon the ground that the stipulation was valid and binding upon defendants (63 N. Y., 414), and remitted the cause to the General Term for the consideration of the other questions in the case. A new trial was granted by the General Term upon the grounds stated in the previous opinion, the court imposing costs of trial as a condition. The case has been

again tried, and a verdict rendered for $3,000. The defendants moved upon the minutes for a new trial, which was denied. They then procured an order staying proceedings and sending the exceptions, as well as the review of the order denying a new trial, to the General Term in the first instance.

The plaintiff, with his wife and daughter, entered a palace car of the defendant at Utica, with tickets entitling them to a passage in the ordinary cars to Albany. Whether they entered this car, knowing that it was a palace car and that extra fare would be demanded, or whether they did so by direction of the conductor, and in the expectation of riding therein without further charge, was in dispute, and was settled by the verdict in favor of the plaintiff. Having refused to pay the extra fare, they were put off the train at Palatine Bridge. The principal violence consisted in the fact that while the intestate was standing on the ground, holding on with one hand to the car rail, the conductor put his arm around his waist and jerked him away, wrenching him all over and injuring his hand.

*R. A. Stanton*, for the respondent.

*Isaac S. Newton*, for the appellant.

LEARNED, P. J.:

It has always been the law that a right of action for an injury to the person dies with the party aggrieved. Not merely does the action abate (as it formerly did always on the death of the plaintiff), but the right of action is absolutely gone. The reason is that there is no longer any person who has been injured and who ought to be compensated. The executors represent the estate; but neither they nor the estate have suffered from the personal injury. And so it was said by the Court of Appeals, that executors cannot maintain an action on an express or implied promise where the damage consists entirely of personal suffering of the deceased, whether mental or corporeal. (*Zabriskie* v. *Smith*, 13 N. Y., 333.)

The statutory action given to the representatives of a deceased party by wrongful injury is no exception to this rule. The ground of that action is not the injury to the deceased, but the injury to his surviving relatives, to whose support he had contributed. The

right of action which the deceased might have had for the injury which caused his death dies with him.

The English courts have made one wise exception. When the injury has affected the estate of the deceased by preventing him from earning money as usual, or by occasioning expense in paying for medical aid, to this extent the right of action survives to the executors or administrators, because they represent the estate thus injured. (*Bradshaw* v. *Lancashire and Y. R. W. Co.*, L. R., 10 Com. Pl., 189.)

In the present case, however, there was no injury to the estate of Mr. Peck, the deceased. The wrong occasioned only bodily and mental pain. But it was held by the Court of Appeals (63 N. Y., 414) that the stipulation of, the defendant's counsel had given the estate of the deceased as assets in the hands of the executors a right of action which it would not otherwise have had. And on the last trial his executors claimed, and were allowed, to recover damages, to go to his estate, on account of the insult which Mr. Peck had received and the suffering, bodily and mental, which he had endured. And the question is now presented by the defendant, what are the proper damages which will compensate Mr. Peck's executors or his estate for pain in his feelings and pain in his finger.

At the first statement, it would seem that such damages could be only nominal. For it might be said that it is no compensation for an assault and battery on Mr. Peck to pay money to his executors, any more than it would be to pay it to any other persons. But the Court of Appeals would not have sent the case back for the recovery of nominal damages. They must, therefore, have held that Mr. Peck's estate was entitled to recover, for the benefit of his creditors and legatees, pecuniary damages, as compensation for his sufferings in mind and body, by reason of the assault and battery.

It might have been suggested that analogy to the English case would hold that the expense of the litigation, already incurred before Mr. Peck's death, was the rule of damages in behalf of his estate. But no such view was taken by the Court of Appeals. We conclude, therefore, from that decision, that Mr. Peck's death transferred to his executors his right of action to recover the sum which would have compensated him for the injury, although, as by the case then appeared, his estate had not suffered at all.

Were the damages given by the jury excessive? This case had been previously tried twice. The damages given on both of those trials had been held excessive. But it was said on the argument, and not denied, that on each of those trials the plaintiff had been allowed to recover exemplary damages. On the present his recovery was limited by the court to damages compensatory. This is,. therefore, the first time that a jury has passed on the question of damages in that light.

It was necessary for the conductor to use some force, for Mr. Peck made some resistance, though slight. The principal alleged injury was in pulling him from the car, when he had his hand on the railing. It is claimed that this act wrenched him and injured his finger, so that subsequently a felon came on it, from which he suffered two weeks. No bone was broken; no blow inflicted. No inability to work was occasioned, unless during those two weeks. And, even as to them, it appears that, at this time, Mr. Peck was on an excursion for health or pleasure.

If any individual, without malice, had inflicted this amount of injury on Mr. Peck, would a jury have rendered a verdict of $3,000? Considering that the conductor was doing what he thought he ought to do, can we avoid the conclusion that the jury was prejudiced? Perhaps the fact that the difficulty arose about Mr. Peck's claim to ride in a parlor car may have prejudiced them. But whatever the cause, is it not obvious that these damages were rendered for something more than the mere actual injury to body and mind? The defendants ought not to be punished for being a corporation, or for running parlor cars. And yet it seems to us that some motive of this kind must have influenced the verdict. If the jury had passed on this question twice before, we might think differently.

We think the damages excessive, and a new trial must be granted on payment of costs by the defendants.

If, however, the plaintiff prefers to stipulate within twenty days after service of a copy of this order to reduce the damages to $1,500 (*Murray* v. *H. R. R. R. Co.*, 47 Barb., 196; affirmed, 48 N. Y., 655) then the motion for a new trial is denied, and the order denying a new trial affirmed, without costs to either party.

Present — LEARNED, P. J., and BOCKES, J.; BOARDMAN, J., not sitting.

Motion for new trial granted, costs to abide the event, unless, within twenty days after notice of this decision, the plaintiff stipulates to reduce the verdict to $1,500, and, in that event, new trial denied, without costs to either party.