DETERMINED IN THE

# THIRD DEPARTMENT,

AT

# GENERAL TERM,

## November, 1878.

---

MANNING R. ROLL, RESPONDENT, v. THE NORTHERN CENTRAL RAILWAY COMPANY, APPELLANT.

*Contributory negligence — where a desperate alternative is presented — Care required of an employee, and from another.*

An employee of a railroad, lawfully using its tracks over which another company has a right of way, has a right to act upon the presumption that the latter company will conform to the rules, such as to giving signals, etc., prescribed by the company, by permission from which it uses such tracks.

When one is forced to a desperate alternative through the negligence of a railroad company, and is injured in his efforts to prevent injury to others, he is not guilty of such contributory negligence as will prevent a recovery for the injuries sustained by him, although his own act was the direct and immediate cause of such injuries, unless such act would constitute rashness in the judgment of a prudent person.

When the negligence of the railroad company has placed a person in such a situation that he must adopt a perilous alternative, the law does not demand of such person the accuracy of judgment required under other circumstances.

*Semble,* that the same degree of care is not required of an employee engaged in his duty upon the track as from a person crossing the track.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury; and from an order denying a motion for a new trial, made upon a case and exceptions.

---

* A portion of the cases decided at this term will be found reported in the next volume — [Hun — Vol. 15.]

*George M. Diven*, for the appellant.

*Smith, Robertson & Fassett*, for the respondent.

Tappan, J.:

This is an appeal by the defendant from a. judgment, entered upon the verdict of a jury, and from an order denying a motion for a new trial. The defendant and the Erie Railway Company occupy and start their trains from the same depot in the city of Elmira. By means of a third rail, the defendant runs its trains from the track of the Erie Railway Company, from said depot, south to " the junction," where defendant's road branches off to the southwest. About eighty rods south of the depot the Erie track crosses the Chemung river, and about eighty rods south of the river is the junction before mentioned. Between the junction and the bridge there are five streets crossing the track, all within the limits of the city of Elmira; the junction is just outside the city line. The shops and round-house of the defendant are about a quarter of a mile south, and west of the junction. The defendant's trains are made up at the shops; the trains going south then back over to the depot, crossing the junction and coming upon the track of the Erie company to reach the depot, where the passengers are taken on. Just south of the bridge over the Chemung. river, the Erie company had a shanty, in which was stored paints and materials used by the painters in the employ of that company. The plaintiff was foreman painter of the Susquehanna division of the Erie road, having a gang of men under him, and was furnished with a hand-car, which was lettered " painters' car." He was also furnished with switch keys, and had the right, and it was his custom, and it was the custom of other foremen with hand-cars on the Erie road, to occupy the track with their hand-cars, at all times and places, and to stop trains whenever necessary, keeping out of the way of passenger trains, so far as possible, with instructions not to stop any train when they could avoid it. Such foremen were in the habit, when necessary, of stopping trains by a motion of the hand, the swinging of a hat, or any signal of danger.

On the morning of the 8th of March, 1875, the plaintiff was

going, by orders, to paint certain bridges of the Erie company, in Big Flats, and proceeded with his hand-car and gang to the shanty, just south of the bridge, to get a barrel of paint and a ladder. These articles were intended to be sent to Big Flats by the way train, which would leave the depot in that direction at 8.40 A. M. To have them sent by such train, they would have to be billed and shipped. Plaintiff's time was short, and he was in a great hurry. Plaintiff did not know the time that defendant's train, to leave the depot at Elmira at 8.35 A. M., backed over; but did know "that this train was in the habit of backing over in the morning." There was no such train on the time-table of the defendant or the Erie Railway Company.

When plaintiff and his men reached the shanty they all looked down the track; there was no train in sight, and the signal ball at the junction was not up to indicate that defendant's train was soon to back over to the depot. The track of the Erie road was visible from this point for a mile and a half; the track of the defendant only to the junction, about eighty or one hundred rods. Plaintiff had opened the shanty and put part of his load upon the hand-car, and was getting the barrel of paint, when Giddings, one of the plaintiff's men, discerned defendant's train backing over, and inquired, "what is that coming?" Plaintiff looked and saw the train backing down upon the track upon which the hand-car stood, within a square and a half or two squares of the shanty. He dropped the barrel of paint, and he and three of his men signaled the train by throwing up their hats and hallooing, and making other signals. The train did not slacken speed at all. Plaintiff said : "Men, let's get the car off." They took hold of the hand-car, plaintiff and his men being with their backs toward the car, facing toward the coming train; they got the wheels of one end off, when they became alarmed by the near approach of the train, and abandoned the effort, and attempted to get out of the way. Two of the men escaped; plaintiff was caught by the train, crushed under the rear end of defendant's coach, and in that way himself and the hand-car, two wheels of which were off the track, were shoved along the track and part way across the bridge over the Chemung river, for a distance of over 300 feet, the train moving at the full speed at which it had approached, until its whole

length had passed the place of the accident. Both bones of plaintiff's right leg were broken in several places, the knee-joint crushed and broken, his foot mashed and broken. The injury to the knee-joint is permanent and destroys its use. This leg, by the injury, was made shorter than the other, is well-nigh worthless, and, according to the evidence, he will never recover the use of it, but will be a cripple for life. He can now only walk with a cane. Plaintiff was forty-three years of age; his trade required him to be on ladders incessantly; he cannot now go up and down ladders, and does not attempt it. Two witnesses testified that if this hand-car had been left upon the track it might have thrown the train off.

There was a conflict in the evidence at the trial upon several important points which bore upon the question of the defendant's negligence. Plaintiff proved the published rules of the defendant, which took effect November, 1874, and were in force at the time of the injury to plaintiff, as follows :

Rule 30. "Each passenger train, while running, must have a bell-cord attached to the signal bell of the engine, passing through or over the entire length, and secured to the rear end of the train."

Rule 60. "The engine bell must be rung from a point one-quarter of a mile from every road-crossing, until the road-crossing is passed, and the whistle must be sounded at all road-crossings at grade where whistling posts are placed."

Rule 93. "When a train is run backwards (except when shifting and making up trains in yards), the conductor must station himself on top of the rear car, or in a position so conspicuous as to perceive the first sign of danger, and give immediate signal to the engineman."

Rule 103. "Passenger trains shall be drawn, not pushed, except in case of accident or other emergency." * * *

Rule 181. "When not engaged in other duties, they (brakemen) shall stand at the door of the car, ready to respond to the signal of the engineman, and they must occupy this position whether the train is equipped with air-brakes or not."

Defendant proved that the brakeman gave the signal to stop the train ; that one of the snaps or couplings of the bell-cord caught

in the tin roof of one of the cars, and thus prevented the engine-man from receiving the brakeman's signal; that the engineer could not see the track in rear of his train, and did not get any warning until after the collision, when he was signaled by a bystander; that the train was running about ten miles an hour. The plaintiff's evidence tended to prove that the train was being backed at this speed and across the streets, as before mentioned, without any signal by whistle or bell, with nobody on the rear of the train or elsewhere on the lookout for signals or obstructions; that there was no one on the inside of the rear car, which was locked; that the train men were not at their posts, but scuffling on the engine. Defendant's witnesses Rarick, Slair, Albro and Hildreth testified that they were in the rear end of the car, which was foremost, as the train was backed, and tried to signal the engineer. The evidence of the plaintiff upon this point was from witnesses who said they were on the lookout, but did not see these men and thought they were not there. Although this evidence was of a negative character, the jury were authorized to give it the force of affirmative testimony, in connection with the positive testimony, that the rear car was locked. (*Renwick* v. *N. Y. C. R. R. Co.*, 36 N. Y., 132; *Bradley* v. *Mutual Benefit Life Ins. Co.*, 45 id., 422.

The court submitted to the jury the questions: First. Whether the defendant's agents in running the train were guilty of any negligence which contributed to the injury complained of. Second. Whether the plaintiff was free from negligence. The court further charged the jury, under the last point stated, that if the train was so close that the plaintiff could see that there was danger, and that he could not with safety attempt to get this hand-car off the track, he had no right to do it; he had no right to hazard himself to save the property; and if he did so, if the jury believed that a reasonable man would not have done such a thing, that it was a hazardous transaction, as he then understood and believed, and his object was simply to save the property of the company, for that purpose and for that alone, then the plaintiff could not recover; that the jury were to say whether at the time he went upon this track, this train was so close that he could reasonably believe and feel assured that he could get the hand-car off the track with safety; and that unless he believed he could do it with safety

he was guilty of negligence, *unless he did it for the purpose of saving human life, or some human being from injury*, and submitted to the jury whether plaintiff had reason to suppose that if the hand-car was left upon the track it would throw the train off; also, whether the plaintiff knew that there was any body upon the train who was likely to be injured in consequence of such an occurrence ; also, that if plaintiff supposed that there was some one upon the train who would, with reasonable certainty, be injured in consequence of the hand-car being left upon the track, and he was willing to risk his person in an effort to get the hand-car off, for that purpose *only* he would be justified in doing so, and he would be entitled to recover so far as this question was concerned.   The defendant's counsel requested the court to charge the jury, that the plaintiff could not recover if he voluntarily placed himself in the position described ; the court declined to charge otherwise than as above stated upon that question.   Defendant's counsel also requested the court to charge the jury, that the plaintiff was not justifiable in placing himself in a position of danger, unless *he actually saw some person in imminent, personal peril ;* the court declined to charge differently than as above stated on that point ; defendant's counsel excepted to the refusal to charge as requested.

The evidence in the case was sufficient to justify the jury in finding that the defendant's servants were guilty of negligence, in running the train at the time and in the manner thereby shown, when the plaintiff was injured.   The more serious question in the case is whether the plaintiff was guilty of such contributory negligence as prevents a recovery for the injuries received by him. Being an employee of the Erie Railway Company, he had the right to go upon the track of the company to obtain and transport the material necessary for use in the employment in which he was engaged.   In using the track for that purpose, it was his duty to conform to the rules prescribed by his company for the government of all its employees engaged in running trains on the road, and he had the right to act upon the presumption that the other employees of such company, or those who run trains upon its tracks by its permission, would conform to such rules.   (*Newson* v. *N. Y. Central R. R. Co.*, 29 N. Y., 383; *Coughtry* v. *Globe Woolen Co.*, 56 id., 124; *Dolan* v. *D. & H. Canal Co.*, 17 Alb.

L. J., 36; *Jetter* v. *N. Y. & Harlem R. R. Co.*, 2 Keyes, 154.) If the defendant had customarily given the statutory signals, in passing crossings, while running upon that part of the track from the junction to the depot, the plaintiff had the right to assume that the signals would be given. (*McGrath* v. *N. Y. C. & H. R. Railroad Co.*, 63 N. Y., 522; *Ernst* v. *H. R. R. R. Co.*, 39 id., 61; *St. Peter* v. *Denison*, 58 id., 416; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, id., 451; *Johnson* v. *Belden*, 2 Lans. Opin., 437.)

The defendant by its negligent act having caused the circumstances of peril and created the emergency, is not released from responsibility because the plaintiff did not exercise the soundest discretion in his efforts to obviate the consequences of its fault; when danger is imminent the law does not demand that accuracy of judgment required under other circumstances. The defendant's negligence having placed the plaintiff in such a situation that he must adopt a perilous alternative, the defendant is responsible, although the plaintiff's act in the emergency was the direct and immediate cause of his injury. (*Stokes* v. *Saltonstall*, 13 Peters, 181; *Wilds* v. *H. R. R. R.*, 33 Barb., 503; *Collins* v. *Albany & Sch. R. R. Co.*, 12 Barb., 492; *Buel* v. *N. Y. C. R. R. Co.*, 31 N. Y., 318; *Dyer* v. *Erie R. Co.*, 5 W. Dig., 430; *Coulter* v. *Am. M. U. Express Co.*, 56 N. Y., 585; *Eckert* v. *Long Island R. R. Co.*, 57 Barb., 555; *S. C.*, affirmed on appeal, 43 N. Y., 502.) In the latter case, this court and the Court of Appeals examined and decided the question as to how far a person is justifiable in voluntarily placing himself in a place of danger to preserve human life, and held that the law will not impute negligence to an effort to preserve it, unless made under circumstances constituting rashness in the judgment of prudent persons.

In that case the plaintiff seeing a young child upon the track of the defendant's railroad, and liable to be killed by an approaching train, seized it, and threw it clear of the track on the side opposite to that from which he came, but continued across the track himself, and was struck by the locomotive and received injuries from which he died. The administratrix of the deceased brought an action to recover damages for his death. In that case, as in this, there was a motion for a nonsuit at the close of the evidence, based upon the apparent contributory negligence of the

defendant, which the Court of Appeals held was properly denied. Negligence on the part of the defendant was clearly proved, The court was requested to instruct the jury, that if the defendant voluntarily placed himself in peril from which he received the injury to save the child, whether the child was or was not in danger, plaintiff could not recover. The requests were refused, and the question whether the negligence of deceased contributed to the accident was submitted to the jury. The jury found a verdict for the plaintiff, and the recovery was sustained. Upon this point in the case at bar, the justice at the Circuit seems to have followed the doctrine of that case. It can make no difference in the application of this doctrine, whether the party acted to save the life of another in view upon a railroad track, upon which a train was approaching, or to save the life of one or more persons upon a railroad train not in view, but known to be on such train, by preventing the train from being thrown from the track. We think the court properly refused to charge as requested in these particulars. The court also properly refused to charge that the same degree of care is required from an employee engaged in his duty upon the track, that is required from a person crossing the track, or from one not an employee going upon the track for any purpose. (*Ominger* v. *N. Y. Central & H. R. R. R. Co.*, 6 N. Y. S. C. R. [T. & C.], Opin., 500.) For the reasons before stated the court properly refused to charge; that for the purposes of this case it was not material whether the statutory signals were given. The defendant's counsel has not argued that any of the rulings upon the reception or exclusion of evidence were improper, or that the verdict was excessive.

We think the case was properly submitted to the jury, and that the verdict is right, and judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOARDMAN and TAPPAN, JJ.

Judgment and order affirmed, with costs.