## SMITH *v.* DITTMAN et al.

*(Common Pleas of New York City and County, General Term.* December 1, 1890.)

1. INADEQUATE DAMAGES—PERSONAL INJURIES.

In an action for personal injuries, it appeared that plaintiff was, at the time of the accident, 20 years of age, in good health, and dependent upon her own labor for a livelihood. At the trial, three years afterwards, there was proof that, in consequence of the injuries, she had, during the whole time intervening, suffered incessant and excruciating pain; that she had lost considerable flesh, and was so weak that she was not able to sit up, or even to rise in bed upon the elbow; and that her injuries were permanent, and it was reasonably certain that her condition would

not improve. Her expenses on account of the injuries amounted to about $3,000, and her loss of earnings to $4 a week. *Held*, that a verdict for $1,000 should be set aside as inadequate.

**2. EVIDENCE—EXCLAMATION OF PAIN.**

Exclamations of pain by an injured person, immediately after the injury, are admissible in evidence in an action for damages therefor.

**3. APPEAL—WAIVER OF OBJECTIONS.**

A plaintiff, by entering judgment on a verdict in his favor, in order to appeal therefrom, is not estopped from objecting to the verdict for inadequacy of damages.

Appeal from trial term.

Action by Isabelle Smith against Semon Dittman and Henry Strahlheim for personal injuries to plaintiff by the negligence of defendants. The jury found a verdict for plaintiff for $1,000. Plaintiff moved for a new trial for inadequacy of damages, and on other grounds. The motion was denied, and plaintiff appeals from the judgment and the order denying her motion for a new trial.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*J. Arthur Barratt* and *D. M. Porter*, for appellant. *Austen G. Fox*, for respondents.

PRYOR, J. The appeal is by plaintiff from a judgment on a verdict in her favor, and from an order denying a motion for a new trial. The motion was made on the minutes, and "upon the ground that the verdict is for insufficient damages, and because the verdict is contrary to the law and to the evidence." I am of opinion that the verdict under review involves a miscarriage of justice which it is the duty of the court to correct. The action is for an injury to the person of the plaintiff, inflicted by the negligence of the defendants. The verdict in plaintiff's favor is conclusive of the liability of the defendants, and, being for $1,000, evinces the judgment of the jury that the plaintiff was entitled to more than nominal damages. The injury occurred on the 15th January, 1887, and was caused by the fall of a bale of cloth, which hit plaintiff on the head. The blow struck her senseless, and she continued unconscious for some time. She recovered, however, sufficiently to walk, with the support of a friend; and within an hour or two she returned to her home. That night she sent for a doctor. He was a physician in active practice, and of nearly 40 years' professional experiences. He had known the plaintiff from her infancy. He testified not as an expert upon a supposititious state of fact, but as an actual observer of real facts within the cognizance of his own senses. Responding to the call, the doctor found the plaintiff "pallid, excited, supporting her head with her hand." "She was in a state of marked prostration, and complained constantly. She complained of pain in her head, more especially the back part and top of her head; and that has been a frequent symptom, with pain in front of the head, almost a constant symptom from that time [15th January, 1887,] to the present, [18th June, 1890.] On the 11th February, 1887, I examined her very carefully, and saw at that length of time the symptoms as I have described them. I found her at that time [11th February] pallid, and already somewhat wasted. She was unable to rise from her recumbent position, and by great effort she could raise her head about one inch from the pillow. She lies in a dozing state a considerable part of the time, and her eyes are partly open,—the eyelids are partly open. When she was aroused she complained, not only of pain in her head, but also in her chest, (which I regarded as neuralgic pain,) and in the abdomen; pain in her bowels; and at times she had pain in her feet. She has occasional sighing respiration. This a physician understands to be a very important symptom, as indicating an affection of the brain. Her mind was wandering. When I asked her how much one from five left, she said two, and that two and five made one hundred and fifteen. Her mind is wan-

dering. She addresses people in the room that were not there. These symptoms continued for some days." On 15th February she exhibited "continued wasting and emaciation, and loss of power in her muscles; inability to use the muscles as in a state of health. February 14th she couldn't rise up on her elbow from a reclining position. Still had persistent headache from back part of the head to the forehead. Complained also of pain in the spine and left leg. The nerves from the hinder part of the brain extending down here produced this neuralgic pain in her limbs; and I would say, as a symptom I noticed then, which seemed to me quite important, and that is that the pulse was only fifty-four,—subnormal pulse,—the ordinary pulse being seventy-six to seventy-eight. Her pulse was fifty-four, showing some pressure upon the brain, the pneumogastric nerve." On the 4th, 19th, 25th, and 28th of March, her symptoms were "a sensation as if the skin were drawn tightly over the head; constant pain in the forehead and back of the head, although ice-bags were constantly applied. The pain extends along the spine and legs. She has pain in the epigastrium, and nausea. Her appetite had greatly failed, and she could only take a small amount of food in a liquid state. Her catamenia, or monthly period, had ceased. It shows a greatly impaired health when that function ceases. She trembles violently when I ask her to extend her leg. She is reclining, with the leg trembling like that with weakness. She has been constantly in the reclining position as you see her, [at the trial,] except as she is supported in an upright position; and, if at any time she has attempted to walk, she found it necessary to be supported." On the 13th April, 1890, three years after the hurt, plaintiff was again examined by the witness, and he found that "she had still this headache, frontal and occipital, daily. She cannot read even a coarse, ordinary print without an increase of the headache. If she attempts to amuse herself in that way, she is obliged to desist. Noise and excitement have the same effect. She lost considerable flesh since the injury, probably thirty or forty pounds." Cannot walk. Cannot sit erect. Cannot rise in bed, even upon the elbow. Cannot raise the weight of eight pounds,—I tested her two or three times. Her appetite is moderate. Takes two or three meals a day. The bowels are habitually constipated." The physician further testified that plaintiff's injury is permanent; "that it is reasonably certain that time will not improve her." No expert was produced to challenge the prognosis of the witness, and to give a more hopeful augury of the event, although plaintiff was attended by a number of the leading physicians of the city. As to her suffering, plaintiff testified that she suffered "very much;" that she "suffered excruciating pain for a long time;" that she "suffered all over;" that she "is not now able to sit up." At the time of her hurt, plaintiff was 20 years old, and was "a healthy young woman," —a fact apparent from the photograph in evidence. Finally, the fact is uncontradicted that plaintiff's expenses, on account of her injury, amount to about $3,000, and her loss of earnings to $4 a week for three years. Such, in summary, was the evidence, and the uncontradicted evidence too, of plaintiff's damage from defendants' wrong; and yet the jury allowed her but $1,000.

It appears that plaintiff was dependent upon her own labor for a livelihood, and of the ability to earn that livelihood defendants have totally and permanently deprived her. For three years her sufferings have been incessant and excruciating; and the "reasonable certainty" is that they will distress her through life. In the vain quest for some cure or alleviation of her agonies, she has already expended three times the amount of money which the jury awarded her in compensation for all the consequences of her injury. In the bloom of early maidenhood she is prostrated by a blow which shatters her body and mind; which bereaves her of all the joy and pride of life; which denies her the felicities of the marriage relation; which dooms her, till death shall happily release her, to a bed of helpless anguish,—and for this the jury thought $1,000 an adequate indemnity. In my judgment the verdict is shock-

ing to reason and to the sense of justice; and is unaccountable except on an hypothesis which the law recognizes as a sufficient ground to set it aside. In *McDonald* v. *Walter*, 40 N. Y. 551, 554, the rule is thus propounded by the court of appeals: "A verdict for a grossly inadequate amount stands upon no higher ground in legal principle, nor in the rules of law or justice, than a verdict for an excessive or extravagant amount. It is doubtless true that instances of the former occur less frequently, because it is less frequently possible to make it clearly appear that the jury have grossly erred. But, when the case does plainly show such a result, justice as plainly forbids that the plaintiff should be denied what is his due as that the defendant should pay what he ought not to be charged." Again, in *Platz* v. *City of Cohoes*, 8 Abb. N. C. 392, an action for personal injury, the supreme court hold that a verdict may be set aside for inadequate damages, and on pages 396, 397, the learned judge says: "I cannot avoid the conviction that great injustice has been done the plaintiff by the verdict. * * * I cannot conscientiously permit this verdict to stand. It is no compensation whatever for the serious injuries the plaintiff has sustained." *Richards* v. *Sandford*, 2 E. D. Smith, 349; *Collins* v. *Railroad Co.*, 12 Barb. 492. I am of opinion, furthermore, that plaintiff is entitled to a new trial for error of the court in the exclusion of evidence.

Plaintiff's counsel propounded this question to a witness: "What exclamation of pain, if any, did she make?" This was on the return of plaintiff to her home immediately after the injury. Upon objection by defendants' counsel, the offered testimony was excluded; to which ruling plaintiff's counsel duly excepted. Again, the question, "Has she made any exclamations of pain?" was excluded; to which, also, plaintiff's counsel excepted. The authority cited by defendants to support the ruling is distinctly and decisively against it. *Roche* v. *Railroad Co.*, 105 N. Y. 294, 298, 11 N. E. Rep. 630; *Hagenlocher* v. *Railroad Co.*, 99 N. Y. 136, 1 N. E. Rep. 536. A story by a plaintiff on the witness-stand of the pain he has suffered may be suspected as a prepared statement by an interested party to sustain his case; but of a different character, and of a far greater probative force, are the involuntary cries of nature wrung from the sufferer by the poignancy of present anguish. The offered evidence bore directly on the question of damages; and the court cannot say that its exclusion did not diminish the amount of the verdict. In disposing of the case, it is not an immaterial consideration that, should a new trial be denied, plaintiff will be remediless,—the court of appeals having no jurisdiction to review the decision of the question by this court,—while, on the other hand, if a new trial be granted, defendants will have still another chance before the jury.

The question suggested by the ingenious counsel for defendants, that plaintiff is estopped, by adoption of the verdict, from challenging its validity, might be worthy of consideration if the facts he recites were before us. But, upon the record, it only appears that plaintiff's counsel entered judgment, a step necessary to perfect an appeal from it; that he did appeal from it; and that he promptly impugned the verdict for inadequacy of damages and repugnancy to the law and the evidence.

It is unnecessary to discuss the propositions that a party may appeal from an unsatisfactory judgment in his own favor, and may concurrently attack the judgment for error of law by the court, and the verdict for error of fact by the jury. The judgment should be reversed, and a new trial awarded, costs to abide the event. *Robbins* v. *Railroad Co.*, 7 Bosw. 1. All concur.