BURDICT v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*.

In Banc, June 18, 1894.

1. **Railroad**: NEGLIGENCE: TRANSITORY ACTION. An action against a railroad company by a switchman for injuries received in another state while in the act of coupling moving cars, caused by the negligence of the company in permitting a ditch to exist across its track, may be maintained without proof of the *lex loci*, it being a transitory, common law action.

2. ———: ———: ———. The rule is otherwise as to a purely statutory action.

3. ———: ———: COMMON LAW: PRESUMPTION. The common law, in the absence of evidence to the contrary, will be presumed to prevail in a sister state.

4. ———: ———: SWITCHMAN: COUPLING CARS. The fact that plaintiff had control of the train, and knew that it was dangerous to walk between the cars while they were in motion, will not prevent recovery on his part, it appearing that he made the coupling in a careful and prudent manner and in the customary way, and that it could not have been made while the cars were standing still.

5. ———: ———: INSTRUCTION. An instruction in such case, that the company is required to exercise reasonable care in maintaining its roadbed in a reasonably safe condition, so that its employees in the exercise of ordinary care or in the discharge of their duties could use the same, is correct.

6. Practice: INSTRUCTIONS. A refusal of instructions is not error where those given fairly present the law of the case.

7. Supreme Court Practice: EXCESSIVE VERDICT: REMITTITUR. Where the damages are excessive in an action at law, the supreme court may indicate such excess and require the plaintiff to remit the same as a condition of affirmance. BARCLAY, GANTT and SHERWOOD, JJ., *dissenting.*

*Appeal from Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

(1) Actionable negligence is the inadvertent failure of a legally responsible person to use ordinary care under the circumstances, in endeavoring to perform a noncontractual duty implied by law, which failure is the proximate cause of injury to the person to whom the duty is due. 16 Am. and Eng. Encyclopedia of Law, p. 389; Bishop on Noncontract Law, sec. 436; Wharton on Negligence, sec. 3; Shearman & Redfield on Negligence, sec. 3. (2) There can be no negligence in the absence of a legal duty due from one person to another. *O'Callaghan v. Cronin,* 121 Mass. 114; Cooley on Torts, p. 60; *Kerwhacker v. Railroad,* 3 Ohio St. 188; Wharton on Negligence, secs. 3 and 24; *Rich v. Railroad,* 87 N. Y. 382; Shearman & Red-

field on Negligence, sec. 9; *Kahl v. Love*, 37 N. J. Law, 5; *Railroad v. Stark*, 38 Mich. 714; *Miller v. Woodhead*, 174 N. Y. 471; *Mahan v. Brown*, 13 Wend. 261. (3) And this duty must be imposed by law. Bishop on Noncontract Law, secs. 132 and 133; *Boyden v. Burk*, 14 How. 575–583; Wharton on Negligence, sec. 24. (4) The accident resulting in plaintiff's injury occurred in Kansas; and before there could be any recovery, it must have been shown that some law, in force in the state of Kansas, imposed upon the defendant the duty of performing those things, the failure to perform which is alleged to have caused the injury. *LeForest v. Tolman*, 117 Mass. 109; *Smith v. Condry*, 1 How. 28; *The China*, 7 Wall. 53; *Phillips v. Eyre*, L. R. 4 Queen's Bench, 225; *Wood v. Wood*, 1 Blackf. 71; *Wall v. Hoskins*, 5 Ired. 177; *Mahler v. Transportation Co.*, 35 N. Y. 352; *Needham v. Railroad*, 38 Vt. 295; *Richardson v. Railroad*, 98 Mass. 85; *Willis v. Railroad*, 48 Am. Rep. 301; *Hyde v. Railroad*, 61 Ia. 441; *Davis v. Railroad*, 143 Mass. 301; *Wooden v. Railroad*, 126 N. Y. 10; *McCarthy v. Railroad*, 18 Kan. 46; *Railroad v. Moore*, 29 Kan. 633. (5) Our courts will not take judicial notice of the statutes of Kansas; nor will they presume that the common law is in force in that state. *Flato v. Mulhall*, 72 Mo. 522; *Sloan v. Torrey*, 78 Mo. 622; *Bain v. Arnold*, 33 Mo. App. 631. (6) The plaintiff, as shown by his own evidence, was guilty of contributory negligence. *Williams v. Railroad*, 43 Iowa, 396; *Marsh v. Railroad*, 56 Ga. 274. (7) Plaintiff's instruction number 1 should have been refused. It told the jury that it was the duty of the defendant to maintain its track so that plaintiff could use the same with safety. *Railroad v. McCormack*, 74 Ind. 440; *Fuller v. Jewett*, 80 N. Y. 46; *Covington v. St. Louis*, 89 Mo. 208; *Siela v. Railroad*, 82 Mo. 430;

*Railroad v. Smithson*, 45 Mich. 219; *Pittsburg etc., Co. v. Sentmeyer*, 5 Am. and Eng. R. R. Cases, 513. (8) The trial court erred in refusing defendant's instructions numbers 9, 10, 11, 13, 15, 16 and 17. (9) The damages assessed were so excessive as to show that the verdict was the result of passion or prejudice. *Sawyer v. Railroad*, 37 Mo. 240; *Adams v. Railroad*, 100 Mo. 555; *Gurley v. Railroad*, 104 Mo. 211; *Furnish v. Railroad*, 102 Mo. 438; *Collins v. Council Bluffs*, 35 Iowa, 432; *Rose v. Railroad*, 39 Iowa, 256; *Potter v. Railroad*, 22 Wis. 586; *Spicer v. Railroad*, 29 Wis. 580; *Railroad v. McKean*, 40 Ill. 218; *Railroad v. McAva*, 52 Ill. 296; *Railroad v. Henry*, 62 Ill. 142; *Chicago v. Martin*, 49 Ill. 242; *Decatur v. Fisher*, 53 Ill. 407; *Railroad v. Hand*, 7 Kan. 380; *Railroad v. Milliken*, 8 Kan. 648; *Railroad v. Young*, 8 Kan. 659; *Railroad v. Peavy*, 29 Kan. 170. And the trial court erred in permitting plaintiff to remit part of the verdict. *Gurley v. Railroad*, 104 Mo. 233; *Railroad v. Montgomery*, 46 Kan. 120; *Moffat v. Sackett*, 18 N. Y. 522; *Cassis v. Delaney*, 38 N. Y. 178; *Steinbuckle v. Wright*, 43 Kan. 307; *Railroad v. Cone*, 37 Kan. 578.

*F. W. Randolph* and *Beebe & Watson* for respondent.

(1) The court properly refused to give defendant's instruction number 9, directing a verdict for defendant. That it was negligent for defendant to permit the hole or ditch to remain in its roadbed for so long a time prior to plaintiff's injury, can not be doubted. If it was necessary to have a ditch there to drain the water, it should have been boxed or covered, as was usually done. *Lewis, Adm'r v. Railroad*, 59 Mo. 495; *Huhn v. Railroad*, 92 Mo. 440; *Hamilton v. Railroad*, 18 S. W. Rep. 977; *Hannah v. Railroad*, 154 Mass.

532.   (2) The question of plaintiff's alleged contributory negligence was properly submitted to the jury. *Lewis v. Railroad, supra; Huhn v. Railroad, supra,* and cases cited.   (3) *First.* The fact that plaintiff was injured in Kansas in no way affects defendant's liability.   It was part of the implied contract between plaintiff and defendant, that the latter should use reasonable care to provide a safe roadbed for his use, wherever he was sent to work, whether in or out of the state of Missouri.   *Gibson v. Railroad,* 46 Mo. 163.   *Second.* It is immaterial on this point whether the court will presume that the common law was in force in Kansas, at the time of plaintiff's injury, but if it were material it is plain the court will so presume.   Territorial Laws, Mo., 436; *State v. Clay,* 100 Mo. 571; *Benne v. Schnecko,* 100 Mo. 250; *Field v. Small,* 102 Mo. 100.   (4) Plaintiff's first instruction declared the law properly.   The specific objection to it (amounting to mere verbal criticism) is met by the following cases:   *Keegan v. Cavanough,* 62 Mo. 230; *Blanton v. Dold,* 18 S. W. Rep. 1149; *Bohn v. Railroad,* 17 S. W. Rep. 580; *Hannah v. Railroad,* 150 Mass. 532; *McKee v. Railroad,* 50 N. W. Rep. 209.   (5) The court did not err in refusing defendant's instructions numbers 9, 10, 11, 13, 15, 16, 17.   (6) The damages are not excessive.   *Porter v. Railroad,* 71 Mo. 83; *Waldhier v. Railroad,* 87 Mo. 49; *Griffith v. Railroad,* 98 Mo. 168; *Stephenson v. Railroad,* 96 Mo. 215; *Furnish v. Railroad,* 102 Mo. 669; *Dougherty v. Railroad,* 97 Mo. 647; *Herbert v. Railroad,* 116 U. S. 646; *Berg v. Railroad,* 50 Wis. 419; *Young v. Railroad,* 19 Kan. 488; *Nandau v. Lumber Co.,* 43 N. W. Rep. (Wis.) 1135; *Railroad v. Moore,* 31 Kan. 197; *Railroad v. Lane,* 15 S. W. Rep. 477; *Bowers v. Railroad,* 7 Pac. Rep. (Utah) 25; *Pense v. Railroad,* 44 N. W. Rep. 686; *Railroad v. Mitchell,* 87 Ky. 327; *Railroad v. Dooley,* 12 S. E. Rep. 923; *Railroad v. Wilcot,* 13 Ill.

App. 490; *Sprague v. Attee*, 46 N. W. Rep. 756;
*Ehrman v. Railroad*, 14 N. Y. S. 336. (7) The trial
court had power to order a *remittitur* and having done
so this court will not interfere with the discretion thus
exercised. *Loyd v. Railroad*, 53 Mo. 509; R. S. 1889,
sec. 2304; Sedgwick on Damages [6 Ed.], p. 765;
*Belknap v. Railroad*, 49 N. H. 358; *Doyle v. Dixon*, 97
Mass. 208. (8) And, even if this court should be of
the opinion that the trial court should have required a
larger remission of damages, and that the action of the
trial court in that respect is open for review, the cause
should not be reversed, without first giving the plain-
tiff an opportunity further to remit. *McCullough v.
Ins. Co.*, 21 S. W. Rep. 207; *Hahn v. Sweazea*, 29 Mo.
199; *Tilford v. Ramsey*, 43 Mo. 420; *Loyd v. Railroad*,
53 Mo. 514; *Cook v. Railroad*, 63 Mo. 397; *Johnson v.
Morrow*, 60 Mo. 340; *Miller v. Hardin*, 64 Mo. 545;
*Waldhier v. Railway*, 87 Mo. 48; *Smith v. Railroad*, 92
Mo. 374; *Keen v. Schnedler*, 92 Mo. 527; *Furnish v.
Railroad*, 102 Mo. 438; *Railroad v. Herbert*, 116 U. S.
644; *Dwyer v. Railroad*, 36 Kan. 58; *Sneed v. Madison*,
62 Wis. 137; *Murray v. Railroad*, 48 N. Y. 655; *Belnap
v. Railroad*, 49 N. H. 358; *Collins v. Council Bluffs*, 35
Iowa, 432; *Pence v. Railroad*, 44 N. W. Rep. 686; *Doyle
v. Dixon*, 97 Mass. 208; *Blunt v. Little*, 3 Mason, 102;
*Kinsey v. Wallace*, 36 Cal. 462; *Mill Co. v. Gillham*,
100 Ill. 55; Graham and Waterman on New Trials
[2 Ed.], sec. 1162. *Clapp v. Railroad*, 19 Barb. 461;
Sedgwick on Damages [6 Ed.], p. 765; 2 Thompson on
Trials, sec. 2067; R. S. 1889, sec. 2304.

DIVISION TWO.

BURGESS, J.—Action for damages for injuries
resulting from alleged negligence on the part of the
defendant, in permitting a ditch to be and remain in

and across its track, by reason of which it was unsafe for persons engaged in switching cars, that being the kind of work in which plaintiff, as an employee of defendant, was engaged in at the time of the accident.

The answer denied all allegations in the petition, and pleaded contributory negligence on the part of the plaintiff. On the thirty-first day of August, 1887, the plaintiff, while in the service of defendant as a switch-man, was endeavoring to make a coupling in its switch yards, in Wyandotte, Kansas, he stepped into a ditch which crossed defendant's roadbed, causing his left arm to be caught between the bumpers of the cars necessitating the amputation of his hand and a part of the forearm. The ditch was about ten inches wide, and twelve inches deep, and extended the entire width of the roadbed. It had been there for at least a year before the accident; looked like a ditch to drain off water.

Plaintiff, at the time of his injury, was working under one Wardell, who was foreman of his crew, and who ordered him to go down the track and couple some cars which were about to be pushed down to some cars that were stationary. They were then at work in defendant's switch yard, known as the "Cypress yards." "He went down to the stationary cars and set the coupling pin on the drawhead so that when the link on the moving car should be entered into the drawhead of the stationary car, the pin would drop in and make the coupling. Plaintiff entered between the cars when they came together to enter the link. When they came together he entered the link and 'stepped back,' but intead of the pin dropping into the link it jumped up and rested against the bumper on the opposite side. Plaintiff then stepped between the cars, reached over and got the pin, and while in the act of dropping it into the link, he stepped into the ditch,

which was under the stationary car, and his left hand going down with him was caught between the bumpers.'' Plaintiff also testified that the way he made the coupling was the usual and proper way.

"The cars were moving at the rate of two or three miles per hour or 'a very slow walk' and had moved only five or six feet before reaching the ditch. After first coming together the slack ran out between the cars leaving a space between the bumper sufficiently wide to receive his arm, when he stepped into the ditch. Plaintiff was ,pushed a car length and a half, with his hand between the bumpers when the slack again ran out of the cars and released him. He got out, was taken to the hospital, where his hand and the lower part of his arm were amputated. He testified that his arm was wholly useless, 'that it bothered him all the time in winter, that it was cold all the time, and always bothered him.' At the time of his injury he was thirty years of age, and had, since he was seventeen years old, worked for railroads, seven years of that period for the denfendant.''

Under the instructions of the court the jury returned a verdict in favor of plaintiff for $12,500. As a condition to the overruling of the motion for a new trial, the court required plaintiff to remit $2,500, which was done. Defendant appeals to this court.

It is insisted by defendant that the court should have sustained the demurrer to the evidence: *first*, upon the ground that the accident occurred in Kansas and that there could be no liability, except such as arose from the laws of that state, and that plaintiff was not entitled to recovery without showing what those laws were, and that under them the facts of the case created a liability; *second*, that plaintiff's own evidence showed that he was guilty of contributory negligence and he could not recover for that reason.

A careful examination of the authorities cited by counsel for defendant in his brief in support of the first proposition shows that they do not support that contention. This is not a statutory action; if it were, the authorities cited would be in point. Upon the contrary, it is a common law action, transitory in its nature, and as the common law, in the absence of anything showing to the contrary, is presumed to exist in Kansas, where the injury occurred, as it does in this state, it was not necessary that plaintiff should introduce any evidence with reference thereto.

The case of *LeForest v. Tolman*, 117 Mass. 109, was an action brought in Massachussetts against the owner of a dog who had bitten the plaintiff in the state of New Hampshire, and it was held that plaintiff could not recover under the statute of the latter state, nor could he at common law, without proof that the defendant knew that his dog was accustomed to attack and bite mankind.

*Hyde v. Railroad*, 61 Iowa, 441, was an action brought in Iowa by the administrator of one Hyde who was alleged to have been killed by the negligence of defendant in this state, purely a statutory action, and it was held that, as the administrator failed to show that by the laws of this state an action could be maintained for such injury by the administrator, such action could not be maintained in that state.

*Davis v. Railroad*, 143 Mass. 301, was also a statutory action and in that case the same rule is announced.

In *Wooden v. Railroad*, 126 N. Y. 10, relied upon by defendant, it is expressly held that an action for the injury to the person in another state is maintainable in New York without proof of the law of the place where the injury occurred, because permitted by the common law which is presumed to exist in the foreign state. It was also held that when the right of action depends

upon the statute conferring it, it can only be maintained in another state upon proof that the statute law, in the state in which the injury occurred, gives the right of action and is similar to the statute of the state where the action is brought. The question now under consideration was brought before this court in *State v. Clay*, 100 Mo. 571, and SHERWOOD, J., speaking for the court with reference to an instrument of writing executed in the state of Kansas, said: "In the absence of any showing to the contrary it will be presumed that the common law prevails in a sister state." See, also, *Meyer v. McCabe*, 73 Mo. 236; *Benne v. Schnecko*, 100 Mo. 250; *Wooden v. Railroad*, *supra*. Moreover, the question was not raised by answer, on the trial, nor by motion for a new trial, and can not now be raised for the first time in this court.

With respect to the second proposition, while it is true, as contended by counsel for defendant, that plaintiff admitted in his testimony that he knew that it was dangerous to walk between the cars while in motion, and that he had control of the train, he also stated that he made the coupling in a careful and prudent way; that the coupling could not have been made if the cars had been standing still, and that the way in which it was done was the customary and usual way. Plaintiff knew nothing of the hole in which he stepped, and which was the cause of the accident. Here the facts as disclosed by the evidence admit of different constructions and inferences as to contributory negligence by plaintiff, and that question was properly submitted to the jury. *Mauerman v. Siemerts*, 71 Mo. 101; *Nagel v. Railroad*, 75 Mo. 653; *Huhn v. Railroad*, 92 Mo. 440.

The instructions given on behalf of plaintiff are as follows:

"1.  The court instructs the jury, that it was the duty of the defendant railway company to exercise reasonable care in maintaining its roadbed in a reasonably safe condition, in order that its employees, in the exercise of ordinary care, or in the discharge of their duties, could use the same with safety.

"And if the jury believes from the evidence that on the third day of August, 1887, there was a hole in defendant's roadbed, at a point about one hundred and twenty feet (120) south of the switch known as the 'Sixth street switch' in defendant's yards, known as the 'Cypress yards,' and by reason of said hole said roadbed was not reasonably safe for the plaintiff in the exercise or ordinary care, to use in the discharge of his duties at the time of said injury, and that said hole existed such a length of time that the defendant railway company either knew, or by the exercise of ordinary care might have known, of its existence in time so that by the exercise of ordinary care it could have put the said roadbed in a reasonably safe condition before the injury.  And if you further believe from the evidence that the plaintiff, at the time and place aforesaid, was in the employment of the defendant, as switchman, and in the exercise of such care as ordinarily a prudent switchman would exercise under the same or similar circumstances, and that while so engaged in his work he stepped into said hole, and by reason thereof his hand was caught between the bumpers of the cars, and he was injured thereby, he is entitled to recover.

"2.  If the jury believe from the evidence that the injury of plaintiff resulted from the failure of defendant to provide a reasonably safe track for the use of plaintiff in the discharge of his duty, and he was in the exercise of ordinary care, then the injury was not the result of the ordinary risk and danger assumed by plaintiff when he entered into defendant's services.

"3. If the jury find for the plaintiff, they will assess his damages at such sum as they believe, from the evidence, he has sustained, taking into consideration the pain and anguish, mental and physical, if any, and the loss of his hand, not to exceed the sum of $15,000."

The court gave, at the instance of defendant, the following instructions:

"1. The court instructs the jury that, before plaintiff can recover in this action, it devolves upon him to prove to the reasonable satisfaction of the jury, by a preponderance of evidence in the case.

"*First.* That there was a hole in defendant's road-bed at the point and of the character set forth in his petition.

"*Second.* That by reason of the existence of said hole, the defendant's roadbed was not in a reasonably safe condition.

"*Third.* That the officers, agents, or employees of defendant, whose duty it was to keep defendant's road-bed in a reasonably safe condition, either knew of the existence of said hole, or, by the exercise of ordinary and reasonable care, could have known of the existence of said hole.

"*Fourth.* That, in undertaking to make the coupling in question, plaintiff stepped into said hole, and that this fact was the direct and proximate cause of his injury.

"And if the evidence in the case fails to satisfy the jury of the existence of any of these facts, their verdict should be for the defendant.

"2. The jury are instructed that the law governing the case is, that the plaintiff, when he entered into the employment of the defendant as one of its switchmen, took upon himself the ordinary risks and perils incident to that business.

"3. The court instructs the jury that, if they believe from the evidence in the case, that plaintiff's injuries were occasioned by a mere accident, and without fault on anybody's part, then the verdict must be for the defendant.

"4. Although the jury shall believe from the evidence that defendant's roadbed was out of repair, and that defendant, by the exercise or ordinary care, could have known of such defect in such roadbed, still defendant would not be liable in this action, unless it failed to repair such defect within a reasonable time after, by the exercise of ordinary care and prudence, it might have discovered such defect, and as to what would be a 'reasonable time,' as above used, would be such a length of time as a man of ordinary care and prudence, engaged in managing and operating a railroad, would take under such, or like, circumstances.

"5. Even though the jury may believe, from the evidence in the case, that there was a ditch across defendant's roadbed, as stated in plaintiff's petition, and defendant's employees in charge of said roadbed either knew of the existence of said ditch or, by the exercise of ordinary care, might have known of it, although the jury may believe that plaintiff, in undertaking to make said coupling, stepped into said ditch and his injuries caused thereby, still, if the jury further believes, from the testimony in the cause, that the plaintiff, in going between the cars and trying to make the coupling while the cars were in motion, was not himself in the exercise of ordinary and reasonable care, and that such lack of ordinary and reasonable care on his part directly contributed to his injuries, then he is not entitled to recover and the verdict will be for defendant.

"6. The court instructs the jury that, by the term 'ordinary and reasonable care,' is meant such as an ordinary, careful and prudent person would exercise

under the same, or similar, circumstances; and this definition applies as well to the care required of the plaintiff as to that required of defendant.

"7.   The court instructs the jury that, while they are the sole judge of the credibility of the witnesses, and of the weight to be given to the testimony, yet it is the exclusive province of the court to define the issues to be determined by the jury, and to instruct the jury on the law applicable to such issues, and it is the duty of the jury, and they have promised in their oaths, to follow the instructions given by the court.

"It is not their province, in determining the questions submitted to them, to indulge in any possible sympathy for the plaintiff, or in any possible prejudice against the defendant; nor should they consider what effect their verdict, in this case, will or may have in any other case against this or any other railroad company, but they are to consider and determine the issues submitted to them in the instructions, and should determine these issues in the same way in all respects as if this were a case between man and man.

"8.   The court instructs the jury that, by the term, 'preponderance of evidence' is meant the greater weight of evidence; and, if the jury believe that the greater weight of evidence is on the side of the defendant, or if the testimony is of such a character or so evenly balanced that the jury are unable to determine on which side the greater weight of it actually is, then in either such event, the verdict will be for the defendant."

The defendant, also, asked the court to give the following instructions, which were refused:

"10.   The court instructs the jury that there is no evidence in this case that defendant knew that there was a hole or ditch across its track at the point where the alleged injury is said to have occurred, prior to the happening of said accident; and before plaintiff is enti-

tled to recover on that account, they must find and believe from the evidence that said hole or ditch had existed for such a length of time, prior to the happening of said accident, that the defendant, by the exercise of ordinary care and prudence on its part, could have discovered the existence of such hole or ditch.

"11.   The court instructs the jury that if they shall believe, from the evidence, that plaintiff set the pin with which to make the coupling of the train of cars in question, in a slanting position, relying upon the jar of the train of cars to make the coupling, and that that was the usual method and a safe method of making the coupling, and that the jar of the train of cars, upon the first trial, did not make such coupling, and that plaintiff controlled the movement and operation of the train of cars, and could have stopped the train of cars until he could have placed it in the position aforesaid the second time, and that he voluntarily undertook to make the coupling without exerting his control over the train of cars, and was injured thereby, then plaintiff voluntarily assumed all risks and dangers incident to the manner of so coupling cars, and, if injured in consequence of such risk, he is not entitled to recover, and your verdict must be for the defendant."

"13.   The court instructs the jury that ordinary care and prudence in this case would have required the plaintiff to have looked where he was walking when upon defendant's track for the purpose of coupling its cars, and if you shall believe, from the evidence, he did not look where he was walking when coupling defendant's cars when he could have done so, and if, by doing so, he could have avoided the injury, then his failure to so look was such contributory negligence on his part as will prevent a recovery in this case, and your verdict must be for the defendant."

It is insisted by counsel that the first instruction given for plaintiff is erroneous; that it was calculated to mislead the jury in that it requires defendant to furnish appliances which will enable its employees to discharge their duties in absolute safety. It was the duty of the defendant to keep its track in reasonably safe repair so as to prevent injury to all persons who might lawfully be upon its track, and for failure to do so it is liable for the censequences. *Lewis v. Railroad*, 59 Mo. 495; *Gibson v. Railroad*, 46 Mo. 163. Nothing more was required of defendant by this instruction. Nor is counsel correct in that there was no evidence upon which to predicate it.

There was no error committed in refusing the tenth instruction asked by defendant. It was, in substance, given in its first and fourth; and the issues presented by its eleventh and thirteenth refused instructions, were fairly and fully presented in other instructions already given. It is not error to refuse instructions when those given fairly present the law of the case. *State to use v. St. Louis Brokerage Company*, 85 Mo. 411; *Baum v. Fryrear*, 85 Mo. 151. The instructions, taken together, present the law of the case fairly to the jury.

But one other point remains to be disposed of; that is, with respect of the amount of the verdict, which is claimed by defendant to be excessive. The verdict was for $12,500. The court required plaintiff to remit $2,500, and upon that condition overruled the motion for a new trial. That the verdict was large, there is no question. The hand injured was the left. Plaintiff was thirty years of age at the time and had been a railroad brakeman for thirteen years. After the injury he was taken to the hospital and his hand amputated. He was then sent to Sedalia to the company's hospital, where he remained for twenty-seven days. He stated that his

arm was of no use to him; was cold all the time in winter and bothered him all the time. The case is free from malice or wanton misconduct on the part of the servants of defendant. There was very little evidence as to the plaintiff's present or former capacity for labor and none as to the amount of his ordinary wages or earnings, either before or after the accident, or to show that he was not in good health. Nor did it appear how long he was laid up and incapacitated for labor; nor the amount of his medical or other expenses.

In *Murray v. Railroad*, 47 Barb. 196, the plaintiff, who was a cooper by trade, and by occupation a driver or teamster in the employ of a brewer, received personal injuries resulting in the loss of a hand, for which he received a verdict for $8,000, and it was held that the verdict should be set aside for excessive damages, and a new trial granted, unless the plaintiff would reduce such damages to the sum of $6,000.

In *Railroad v. Milliken*, 8 Kan. 647, an action for injuries to the person where the only permanent disability was the loss of a hand and where there was neither lengthened sickness nor extraordinary suffering, a verdict of $10,000 was held to be excessive.

Under the authorities cited and the circumstances disclosed by the evidence in this case, we think the damages allowed for the injuries still excessive, and that the judgment should be reversed and cause remanded on the ground of excessive damages, unless plaintiff will remit $3,000 within thirty days.

All of this division concur, except as to the *remittitur* upon which there is a difference of opinion, in consequence of which the case is transferred to the court *in banc.*

IN BANC.

BLACK, C. J.—The opinion heretofore filed in this case is now approved by court *in banc*. The only question calling for further discussion is the one raised by the objection that the damages are excessive. The claim of defendant is that, when the court has reached the conclusion that the damages are excessive, the judgment should be reversed and a new trial ordered; while the plaintiff insists the court should indicate the excess and allow him to remit it and take a judgment of affirmance for the residue. There is certainly much conflict in the authorities on this question of practice. It is believed a review of all of them will accomplish no good at this time. Special mention will be made of a few recent decisions only.

*Belt v. Lawes*, 12 Q. B. Div. 356, was heard in the court of appeal in 1884. It was an action for libel. BRETT, M. R., said:

"The first point in this case is a pure point of law, namely, whether the judgment of the majority of the divisional court can in law stand as it is, if the verdict can not otherwise be impeached, it being founded on the consent of the plaintiff alone that the amount of the damages should be reduced from £5,000 to £500. In my opinion such judgment can stand. Where the complaint is only that the damages are excessive, and the verdict can not be otherwise impeached, and it is a case where the plaintiff is entitled to substantial damages, the court has power to refuse a new trial without the consent of the defendant, on the plaintiff's consenting to the amount of the damages being reduced to such an amount as, if it had been given by the jury, the court would not have considered excessive. It has been argued that this can not be the right rule, because it is said that if the damages are excessive the court

must come to the conclusion that the verdict is wrong, and the inevitable result of that must be a new trial. But the court is asked to exercise its discretionary power, and to say that the jury have given larger damages than they ought to have given. The court does not give damages, but it only says that if the jury had given a sum which was a part of what they had given, the court would not have been dissatisfied. * * * I have not the least doubt that where, as in the present case, the jury have given damages which are challenged only as being too large, the court has power to say that if the jury had given less, as £500 and not £5,000, the court would have considered such damages not excessive, and, therefore, to say if the plaintiff will consent to the verdict being for that amount, the defendant will really have no grievance. I see nothing in principle against reducing the damages un der such circumstances, and it has certainly for years been the invariable practice of the courts to do so.''

For a long time the rule in Wisconsin was that contended for by the defendant in this case, but it was much modified by the recent case of *Baker v. City of Madison*, 62 Wis. 150, which was a personal damage suit. There had been three verdicts, one for $3,000, one for $2,500, and the last for $6,000. The supreme court allowed the plaintiff to remit $2,500 and take an affirmance for $3,500. Lyon, J., in speaking for the court, alludes to the fact that the appellate courts of many of the states have adopted the practice of indicating the excess and giving, or directing the trial court to give, the plaintiff the option to remit such excess and take an affirmance for the residue. He then uses the following language:

"The main ground upon which the rule of *Potter v. C. & N. W. R'y Co.*, *supra*, is rested, is that if the court assumes to fix a sum for which the plaintiff may

have judgment, it thereby usurps the functions of the jury. * * * Certainly, the usurpation is the same if the trial court does the same thing. Yet the right of the trial court to allow the plaintiff to remit the excess, and then give him judgment for the residue, is almost universally recognized, and, so far as we are advised, such has always been the practice in this state. * * * All that we now do is to make the rule of *Potter v. C. & N. W. R'y Co.* sufficiently elastic to enable the court, in a proper case, to relieve the plaintiff from the delay and expense of another trial, when the only fault in the verdict is that it gives him too large an amount. If other material errors have been committed, prejudicial to the defendant, or if there is reasonable ground for belief that the jury were moved by improper motives or led astray by ignorance, or if any other grounds exist satisfactory to the court, a new trial will be ordered. In the present case the plaintiff's right of action has been established by a verdict which is free from error affecting such right. The jury honestly awarded him too large damages. Other verdicts indicate the sum he ought to recover. We do not hesitate to give him the option to take his judgment for the proper sum, and thus end the litigation."

The following cases will show that the trend of modern judicial opinion is in the same direction: *Railroad v. Dwyer*, 36 Kansas 58–74; *Black v. Railroad*, 10 La. Ann. 33–39; *Mortimer v. Thomas*, 23 La. Ann. 165; *Belknap v. Railroad*, 49 N. H. 358–374; *Murray v. Railroad*, 47 Barb. 196–205; s. c., 48 N. Y. 655; 3 Sedg. on Dam. [8 Ed.] sec. 1322, and cases cited.

In *Loyd v. Railroad*, 53 Mo. 514, the plaintiff was allowed to remit in the trial court, and the *remittitur* there entered was held to be a valid answer to the objection that the damages awarded were excessive. A like objection was overcome by entering a *remittitur*

in this court in the following cases, which were personal damage suits: *Waldhier v. Railroad,* 87 Mo. 37; *Smith v. Railroad,* 92 Mo. 374. If, as these cases hold, the plaintiff can avoid the objection that the damages are excessive by remitting a part of the judgment of his own volition, no good reason can be seen why this court may not indicate the excess and then allow the plaintiff, if he desires to do so, to take an affirmance for the balance. Indeed, this course was pursued in *Furnish v. Railroad,* 102 Mo. 456, where there was a verdict for $15,000, which was deemed excessive and the court left it to the plaintiff to remit $5,000 or submit to a new trial. If these cases are to be respected, and they have never been overruled, they settle this much, at least, that this court will, in a proper case, where the only valid objection is that the damages are excessive, direct the plaintiff to remit the excess. It is true that some observations of a contrary import were made in the late case of *Gurley v. Railroad,* 104 Mo. 233, but in that case there was error in the instructions, so that the judgment could not have been affirmed had the plaintiff's request to remit been granted.

An argument pressed upon our consideration in this case is this, that if this court has the right and power to reduce the damages when excessive, it has the right and power to increase them when inadequate. We do not see the force of this line of argument. In one case the court simply says the judgment may stand for a part of the amount found by the jury, while in the other case it would add something never within the terms of the verdict.

If it can be seen and fairly said, the jury gave the excessive verdict by reason of prejudice, passion or any other improper motive, a new trial should be awarded; for the inference would be a fair one that

the finding for the plaintiff was also brought about by improper influences, and this is especially so when there is any doubt as to the right of the plaintiff to recover. Indeed, the verdict may be so large and out of all reason as, of itself, to furnish sufficient evidence that it was the result of passion or some other improper influence. But it does not follow that a verdict is necessarily the result of prejudice or passion because it is excessive. It might just as well be said that the mistakes made by appellate judges are the offspring of prejudice. Jurors, like other persons, may, and often do, err, though conscientious in the discharge of their duties. Common experience teaches us that verdicts differ widely, even in the same case, where the evidence as to the extent of the injury is precisely the same, and this, too, when there is nothing whatever from which the conclusion can be fairly drawn that the jurors were under the influence of any improper motive. Nor is there anything strange in this when it is remembered that no exact guide can be given as to the amount of damages to be allowed. In the very nature of things, the amount of damages must, to a large extent, rest with the jury. This court is constantly reviewing verdicts in this class of cases, and is in a position to be able to judge when a verdict is so far beyond those usually allowed in like cases as to be excessive, and litigants ought to have the benefit of its judgment.

When it is conceded, as it generally is, that an appellate court can say a given verdict is excessive, it follows that it can designate an amount which would not be excessive. If it possesses the power to say the one thing, it possesses the power to say the other. The law is a practical affair, and ought to be administered in a practical way, so as to work out substantial justice by avoiding, as far as possible, the long

delays and accumulated costs incident to reversals and repeated trials.

Indeed, second and third trials, as a general rule, result in increased verdicts. Where there is no just complaint, save that the damages are excessive, we are unable to see any good reason why this court may not indicate the excess and give the plaintiff the option to remit that excess or submit to a new trial. Such a practice is in the interest of justice, and is the practice heretofore pursued by this court, and that now adopted by many of the state courts of last resort. In the case now in hand, the plaintiff, if entitled to recover at all, is entitled to recover substantial damages; the finding in his favor is well supported by the evidence; there is nothing in the record from which it can be said the jurors were actuated by any improper influence; and there is no error, save that the damages are excessive. In such a case this court should designate the excess, and allow the plaintiff to remit it and take an affirmance for the residue. The plaintiff having remitted $3,000, the judgment is affirmed for the residue. BRACE, MACFARLANE and BURGESS, JJ., concur. BARCLAY, GANTT and SHERWOOD, JJ., dissent from what is said in this supplemental opinion.

BARCLAY, J. (*dissenting*).—Some of the rulings in the opinion delivered by my learned colleague, Chief Justice BLACK, are of far reaching importance to the people of Missouri. They seem to me, with due respect, in direct conflict with the constitution, which declares that the right of trial by jury shall remain inviolate, as it existed when the fundamental law was adopted in 1875. Const. 1875, art. 2, sec. 28.

1. The right to a jury trial in ordinary actions has been supposed to be guaranteed to our citizens

from a very early date.   Const. 1820, art. 13, sec. 8;
Const. 1865, art. 1, sec. 17.

At the time when the present constitution took
effect, that right was conceded by the supreme court
in all actions at law (excepting a small class, involving
long accounts, wherein a trial by referee was per-
mitted).

An important incident to that right is the finality
of the decision of the trial jury (if approved by the
trial judge), upon all questions of ·fact, in those
actions.

It has heretofore been considered the settled con-
struction of the organic law, that the supreme court
has no constitutional authority to review a decision of
the trial court upon issues of fact in a case like that at
bar.

On this point, a very recent utterance by the pres-
ent chief justice, speaking for the whole court, is as
follows:

"While this court may determine whether there is
any evidence to support a given theory, still, where
there is such evidence, it has no more power to review
the finding of facts made by the court in actions at
law than it has to review the findings of fact made by
a jury in like cases."   *Krider v. Milner* (1889), 99 Mo.
145.

This conforms to the ruling in an early case, that
"the decision of the circuit court, sitting as a jury,
will not be set aside, unless the record shows that the
circuit court was called on to decide some question of
law, and that its decision was wrong."   *Vaughn v.
Bank* (1845), 9 Mo. 375.

In *Hamilton v. Boggess* (1876), 63 Mo. 252, it was
unanimously said:   "We wish it to be understood
that it is not our province to determine facts or review

the findings of juries or courts on them, except in chancery cases."

It is unnecessary to quote more decisions to sustain so clear a proposition.

In every volume of our reports, cases can be found which directly assert it, or indirectly assume its correctness by referring to some question of fact as being one "for the jury."

2. The question as to the proper sum to be awarded as compensation for the pain, disfigurement and permanent disability caused by the loss of an arm, is a question of fact, and as such it is not reviewable by an appellate court whose constitutional power of review in such cases extends to questions of law only.

It seems strange, at this day, to find this proposition disputed, or rather ignored.

It properly belongs to elementary law. 4 Minor's Institutes, 757. It has frequently been declared, with more or less directness, in many precedents in Missouri, as well as in other jurisdictions.

In 1855 a verdict for $2,000 in an action for personal damages was reversed by the supreme court on the sole ground that it was excessive. *Goetz v. Ambs*, 22 Mo. 170. But on a second appeal, when the court was confronted with a still larger finding ($3,000), it affirmed the judgment in an opinion declaring that "another interference by the court would not only be an unwise exercise of its power, but would seem to be a usurpation of the province of the jury." *Goetz v. Ambs* (1858), 27 Mo. 28.

This latter decision, in effect, overrules the prior one in the same case, as to the right of the supreme court to reverse for excessive damages.

In *Loyd v. Hannibal, etc., Railroad Co.* (1873), 53 Mo. 514, a *remittitur* of part of the damages had taken place in the trial court, and when the issue of an

excessive verdict was raised on appeal, the court declared: "The amount of damages, as it originally stood, was large, perhaps greater than the injury sustained would seem to authorize; but as this sum was, by a *remittitur*, reduced to a sum satisfactory to the judge who tried the case, there is no ground for the interference of this court on that point."

In *Dale v. St. Louis, etc., R'y Co.* (1876), 63 Mo. 460, the court unanimously said: "The verdict in this case on the first trial was set aside on account of the damages being, in the opinion of the court, excessive. A second verdict was for the same amount which the court refused to set aside, and any interference by this court would be a usurpation of the province of the jury. (*Goetz v. Ambs*, 27 Mo. 34.)"

In *Porter v. Railroad* (1879), 71 Mo. 83, we find this ruling: "There have been three trials of this cause, and three verdicts for plaintiff, the first for $10,000, the second, $12,000, and the third for $10,000; and we could, with no propriety say, under these circumstances, that the damages are excessive."

In a later case this passage appears: "The appellant contends that the damages are excessive. There is testimony to support the verdict, and the instructions taken together correctly state the measure of damages. In such cases we can not interfere." *State ex rel. v. Gaither* (1883), 77 Mo. 306.

The principle, expressed or implied, underlying the five cases last cited is readily found.

If an award of excessive damages, in cases of this sort, constitutes an error of law, it could, and should, be corrected on appeal as often as it might recur; but if it involves only a question of fact, it is no more subject to review on the first appeal than on any later appeal.

The results reached in those cases, as well as the

express terms of some of them, show that the court then considered that excessive damages, in actions for tort, did not raise an issue of law on appeal to this court.

No doubt, remarks may be found in some decisions to the effect that the supreme court will not set aside a verdict on the ground of excessive damages unless the latter are so great as to indicate passion or prejudice on the part of the jury. But those observations occur chiefly in cases where the court declined to interfere, and in which the distinction between the functions of the trial court and of the supreme court, under the constitution, was not discussed.

In *Sawyer v. Railroad* (1866), 37 Mo. 264, the court advanced an opinion that the damages were excessive, but refrained from placing the reversal of judgment on that ground.

In *Kennedy v. Railroad Co.* (1865), 36 Mo. 351, the court used the following language on this subject: "The ground urged for a reversal, that the damages are too large, is not good here. There was evidence to go to the jury, and where that is the case it is their peculiar province, under proper instructions from the court, to determine the amount. Before we are at liberty to interfere with a verdict, it must appear at first blush that the damages are flagrantly excessive, or that the jury have been influenced by passion, prejudice or partiality. When there is any evidence to support the verdict, it will not be disturbed; but this court will interfere when there is no evidence, or when the court below gives an instruction which is not authorized by the evidence."

In *Gregory v. Chambers* (1883), 78 Mo. 294, and *Pritchard v. Hewitt* (1887), 91 Mo. 547, the court declined to set aside verdicts for wholly inadequate damages. Each verdict was for $1. In the former case

the verdict was also against the evidence, yet it was rightly held that those were questions of fact, and the ruling thereon by the trial court was conclusive. In the latter decision the court made similar remarks to those in the *Kennedy case*, as to the want of power in this court to interfere unless the verdict showed passion or prejudice on its face.

The same theory was approved by a majority of the judges of division one, in the very recent judgment in *Boggess v. Metropolitan R'y Co.* (1893), 118 Mo. 328.

In *Gurley v. Mo. Pac. R'y Co.* (1891), 104 Mo. 211, the second division denied the right to require a *remittitur* on appeal where the damages were excessive, saying: "We do not think it within our province to assess the damages;" and that "we have no right to set ourselves up as triers of facts and render another and different verdict."

In *Franklin v. Fischer* (1892), 51 Mo. App. 348, the St. Louis court of appeals took the same view, declaring that "to enforce a *remittitur* on appeal is to destroy the integrity of the verdict, and to substitute our judgment for that of the jury on a question which is eminently a question of fact."

If the last two quotations are correct in holding the question under consideration to be one of fact, it follows logically and necessarily that it is a question not reviewable in any manner by this court, in actions of this description.

No basis has ever been stated for a distinction between this question of fact and any other question of fact, with respect to the right of this court to review it.

Neither the constitution nor any statute makes such a distinction.

If it be held that this court may reverse the action of the trial judge and jury on one question of fact, in

actions at law, it must be because of the possession of power to review all questions of fact in such cases.

Where judges of this court consider a finding of fact so far wide of that which they would render, in a given case, as to appear to them to indicate passion or prejudice of the jury, the nature of that finding is not thereby changed, nor does that opinion at once transform an error of fact into an error of law. The gravity of the mistake made by the constitutional triers of the fact does not enlarge the jurisdiction of this court, or authorize it to decide an issue not committed to, but excluded from, its reviewing power by the constitution.

But the opinion by the majority in the present case does not assert a right to interfere to reduce a verdict where it shows passion or prejudice. The court seems to abandon that position, but it then proceeds to take a far bolder one. It holds that mere excess in the finding is subject to review here and to correction, by substituting the verdict of four judges of this court for the finding and judgment of the trial court, upon a question which is one of fact alone, as many of the strongest and ablest courts in other states have expressly held, as well as our own courts, already quoted.

The United States supreme court has so declared on several occasions.

In *Boggess v. R'y Co.* (1893), 118 Mo. 340, an excerpt from its opinion on that point in *Railroad v. Fraloff* (1879), 100 U. S. 24, will be found. Since the latter ruling, the same principle has been several times applied in other cases. *Railroad v. McDaniels* (1882), 107 U. S. 454; *Railroad v. Winter's Adm'r* (1892), 143 U. S. 60. In the *Winter case* (p. 75) the issue of excessive damages is expressly held to be one of fact and hence not reviewable by that court.

The courts of appeal of the United States have

announced the same view, in one case where a verdict for $18,250 for personal injuries was challenged on the ground that it appeared to have been given by reason of passion and prejudice *(Northern Pac. R'y Co. v. Charless* (1892), 51 Fed. Rep. 562), and in another, where a verdict for $4,000 for libel was similarly questioned (*Morning Journal Ass'n v. Rutherford* (1892), 51 Fed. Rep. 513; 16 L. R. A. 803). It was held in both instances that the verdicts were not reviewable for excess, because the appellate court had power to review errors of law only.

In Illinois the supreme court formerly revised verdicts for excessive damages in law actions; but the laws of the state were then amended so as to declare, explicitly, that the supreme court should have no power to review questions of fact. Since then, that court, recognizing that this question is one of fact, have held that it was not reviewable by them. *Chicago, etc., Cab Co. v. Havelick* (1889), 131 Ill. 179; *Joliet Street R'y Co. v. Call* (1892), 143 Ill. 179; *Railroad v. Bode* (1894), 150 Ill. 396.

This is the law in Michigan:

"Whether damages found by a jury are excessive or not does not present a question of law. If no improper testimony affecting the subject of damages has been admitted, and the court has given to the jury proper instruction to guide them in reaching a conclusion, the amount of the damages awarded is beyond the reach of a writ of error." *Hunn v. Railroad* (1889), 78 Mich. 513.

In New Hampshire we find the subject thus treated:

"To justify the setting aside of a verdict because of excessive damages, it should appear that they were so exorbitant as to warrant the belief that the jury must have been influenced by partiality, passion or

prejudice, or misled by some mistaken view of the merits of the case. Sedgwick on Damages, 601; *Belknap v. Railroad*, 49 N. H. 358, 370–375. But neither this objection, nor the further objection that the verdict was against the evidence, presents any question of law. Such questions of fact are to be determined at the trial term." *Hovey v. Brown* (1879), 59 N. H. 114, followed as settled law in *Merrill v. Perkins* (1881), 61 N. H. 262, and in *Clark v. Manchester* (1887), 64 N. H. 471.

[Nevertheless, the *Belknap case*, from the forty-ninth report of that state, appears as a citation in the prevailing opinion here as an authority for a review (on appeal) of that question.]

In New York, in *Gale v. Railroad* (1879), 76 N. Y. 594, "it was claimed that the damages awarded were excessive. The court stated their opinion to be that the claim was well founded, but that they had no jurisdiction to reverse upon that ground."

To the same purport are *Metcalf v. Baker* (1874), 57 N. Y. 662, and *Link v. Sheldon* (1892), 136 N. Y. 5 (32 N. E. Rep. 696.)

This is the view in Oregon:

"Where the verdict of a jury is excessive, it is the duty of the *nisi prius* court to set it aside, but its refusal to do so can not be reviewed by this court. Nothing but questions of law appearing upon the transcript can be reviewed here. The verdict herein may have been much larger than this court would have allowed under the evidence in the case, or in view of the facts found by the jury. Still we have no right to set it aside, or reverse or modify the judgment entered thereon. The jury are judges of the facts, and however widely our view might disagree with theirs, matters nothing. We have no right to invade their province, however sanguine we may be that they have committed error." *Nelson v.*

*Oregon, etc., R'y Co.* (1886), 13 Ore. 141, followed in *Kumli v. Railroad* (1892), 21 Ore. 505.

In Pennsylvania the settled doctrine, governing the action of the supreme court, has been lately stated very tersely, in an action for personal injuries, thus: "It is enough to say that the only remedy for an excessive verdict is a motion for a new trial, and that the refusal of such trial is not assignable as error." *Vallo v. Express Co.* (1892), 147 Pa. St. 404.

In South Carolina, under a constitution conferring jurisdiction on the supreme court, "for the correction of errors at law" (Const. (S. C.) 1868, art. 4, sec. 4), it is held that the subject of excessive damages for personal injury "can not be reviewed" by the supreme court. *Steele v. Railroad* (1879), 11 S. C. 589; *Dobson v. Cothran* (1891), 34 S. C. 518.

In all the jurisdictions from which the above cases have been cited, excessive damages in actions of this sort are held to belong to the domain of fact.

3. In Missouri the trial courts have been invested with the power to review such questions, upon motion after verdict. They have the power to set aside the verdict if it is against the evidence, or the weight of evidence.

The power of the trial judge to revise a verdict upon the facts, in respect of its amount, is of modern growth. The rule of the old English law was that "in actions founded upon torts, the jury are the sole judges of the damages, and therefore in such cases the court will not grant a new trial on account of the damages being trifling or excessive." Buller's Nisi Prius [7 Ed.], *p. 327.

The rule is different now in England by virtue of parliamentary legislation, to be noted later in this opinion.

But, in this state, the trial courts have the

undoubted power, and it is often their duty, to vacate findings of damages for personal injuries, when those findings, in the opinion of the court upon the facts, appear so excessive as to indicate that prejudice or other improper motive of the jury entered into the result. Compare *Whipple v. Cumberland, etc., Co.* (1843), 2 Story, 661; *Porter v. Railroad* (1879), 71 Mo. 83.

But if the verdict is merely excessive, that is to say, too great, under the evidence, the trial court in the exercise of its right to review on the weight and sufficiency of evidence may cut it down (if a *remittitur* by the prevailing party be entered) to a sum which will accord with the evidence on that point.

The amount of a verdict may sometimes form part of an issue of law; for example, in some actions on contract (*Pratt v. Blakey* (1838), 5 Mo. 205; *Hoyt v. Reed* (1852), 16 Mo. 294), and in other instances not in view now. Compare *Logan v. Small* (1869), 43 Mo. 254; *Todd v. Boone Co.* (1844), 8 Mo. 431; *Attwood v. Gillespie* (1836), 4 Mo. 423.

In such cases the supreme court on appeal (no less than the trial court) may apply the proper corrective, by *remittitur* or otherwise, which the error of law disclosed may require. Such cases are no authority for reviewing excessive damages here, in a case like that at bar.

Where the jury have been correctly instructed on the measure of damages, in a case disclosing a substantial personal injury, the ascertainment of a pecuniary equivalent for the resulting pain and physical disability, is not a question of law at all. 16 Am. and Eng. Encyclopædia of Law, p. 582. It involves the decision of a question of fact only, and as such it falls outside the jurisdiction of this court, just as do questions upon the weight of evidence.

Since the adoption of the constitution of 1875, the supreme court, in a few instances, has assumed the power to cut down verdicts in actions for personal injuries. *Waldhier v. Railroad* (1885), 87 Mo. 37; *Furnish v. Railroad* (1891), 102 Mo. 438. But in neither of those cases was the constitutional objection to such action met, or discussed, or, apparently, considered. In the latter of those decisions the court was not united; and neither of them can, in my opinion, be accepted as having the force of an amendment to the constitution.

In *Smith v. Wabash, etc., Co.* (1887), 92 Mo. 359, the plaintiff remitted a part of his recovery, when its amount was challenged as excessive; but the official report does not show that the supreme court forced the *remittitur*, or considered its power to force a *remittitur*.

If law is to be administered with a due regard to the principles which give it life, this court should either review all questions of fact or none, in actions at law. If it has power under the constitution to act on a question of fact in respect of damages, which the judges here deem excessive, the court should also review the facts in all cases; and thus give all litigants alike the benefit of that reviewing power.

4. In this connection it is also interesting to observe that the majority of the court only claim the power to cut down the verdict by *remittitur*. They expressly disclaim the right to require an *"additur"*— or increase of damages by stipulation of the defendant, in event, perchance, a verdict for totally inadequate damages should be rendered for some plaintiff. In such a contingency, the plaintiff can not have the benefit derived from considering "other verdicts in this class of cases," which, it is said, may be looked at to

ascertain any excess in the verdict. Yet one of the decisions, invoked to support the ruling in favor of compelling a *remittitur* (*Belt v. Lawes* (1884), 12 Q. B. Div. 356), also intimates, very plainly, that the same principle might be applied to increase the damages.

If a court has power to act upon the facts, it may require a finding of damages to be reduced by presenting the alternative of a new trial.

But the consent of the party remitting is essential to such a result. With a like stipulation for larger damages, there is no sound reason why judgment therefor may not be given when the plaintiff has been awarded an insufficient amount by the jury.

The basis for the judgment in each instance is the consent of the party against whom the order of the court operates.

And so we find that the principle of "*additur*," no less than of *remittitur*, has been approved by many courts. *Weeding v. Mason* (1857), 2 C. B. N. S. 382; *Carr v. Miner* (1866), 42 Ill. 179; *James v. Morey* (1867), 44 Ill. 352; *West v. Railroad* (1882), 56 Wis. 318; *Caldwell v. Railroad* (1889), 41 La. Ann. 624.

The right to act upon verdicts in this manner, however, is, generally, but an incident to the right to review them on the facts, as already stated.

5. The idea that this court may properly sit as a sort of board of equalization of damages in actions for personal injuries, because, as the learned chief justice says, it "is constantly reviewing verdicts in this class of cases, and is in a position to be able to judge when a verdict is so far beyond those usually allowed in like cases as to be excessive," has certainly the merit of originality.

To give that idea practical form, a table might be prepared, based on judicial experience, showing the

proper limits of damages "usually allowed" for the loss of a hand, foot, leg, etc., and all combinations of such injuries, so that a plaintiff in such a case might know, in advance of an appeal, how much of the verdict of a jury to cut off, in order to save the costs of an appeal.

Such a table would, sometimes, at least, give a hint to interested parties of what verdict they might expect in the court of last resort. Without some such guide, the finding there, until announced, would be quite as uncertain, as that of any other group of fair and sensible men to whom such an issue might be submitted.

Findings on such issues of fact are liable to take a wide range at the hands of different sets of triers, whether judges or jurors.

The learned chief justice has cited in his opinion a late English case which furnishes a fine illustration of that truth. *Belt v. Lawes* (1884), 12 Q. B. Div. 356.

In that case the jury found for the plaintiff for 5,000 pounds sterling (about $25,000) in an action for libel. In the divisional court, a majority of the judges required plaintiff to reduce the recovery to 500 pounds (about $2,500); but defendant appealed again, and in the court of appeal, the judges held that the original verdict was not too great, and gave judgment accordingly for the 5,000 pounds.

The decision is an instructive object lesson of the variety of opinions prevailing on questions of this kind, even among judges of great experience.

6. In testing the strength of the precedents cited to uphold the result reached on the present appeal, it should be remarked that the English case, last above mentioned, was determined under the procedure established by the Judicature Act, which made the trial court that first heard that case, and the court of appeal which reviewed it, merely different branches of

the same "supreme court of judicature." As parts of the same court, the court of appeal and divisional courts are invested by the law with power to act upon the verdict in the trial court, in the matter of amount. (Sup. Ct. Judicature Act, 1875, Pub. Gen. Stats. 1875, pp. 830, 831, 1st schedule, order 58, secs. 2, 5, 11.) *Webster v. Freideberg* (1886), 17 Q. B. Div. 736; *Railroad v. Wright* (1886), 11 App. Cas. 152. Thus, for example, in *Phillips v. London, etc., R'y Co.* (1879), 5 Q. B. Div. 78, the Queen's Bench division granted a new trial to a plaintiff who had had a verdict for seven thousand pounds (about $35,000), for personal injuries sustained in a collision; and that ruling was approved in the court of appeal, on the sole ground that the damages were inadequate.

The decision in *Belt v. Lawes*, 12 Q. B. Div. 356, can not, therefore, be regarded as any authority whatever, upon the right to review excessive damages in appellate courts, organized under our constitution and laws.

In England, prior to the Judicature Act, in *Britton v. South Wales R'y Co.* (1858), 27 L. J., Exch., N. S. 355, the plaintiff having had a verdict for £2,000 sterling before WILLES, J., and a jury at *nisi prius*, the court of exchequer (POLLOCK, C. B., MARTIN, B., BRAMWELL, B., and WATSON, B.) declared: "We can not take the matter of damages out of the hands of the jury when the judge is not dissatisfied with their finding. It is impossible to measure the damages in such cases, and we can not substitute ourselves for both judge and jury."

No other point was made, and the foregoing lines embrace the whole opinion in that case.

Nor is the decision cited from 47th Barbour any authority on the subject in hand, for, by the law of New York then in force, the supreme court (in which

the decision was rendered) had power to review the facts, and to reverse judgments on the weight of evidence. *Macy v. Wheeler* (1864), 30 N. Y. 237; *Hoyt v. Thompson's Ex'r* (1859), 19 N. Y. 211.

The citation of the case in 47th Barbour, on appeal to the court of appeals (48 N. Y. 655), merely shows an affirmance of the former decision; but it has no bearing on the power to review the subject of excessive damages in a court having jurisdiction of errors of law only. That topic is abundantly treated in other New York cases, already cited in this opinion.

In Louisiana, from which another citation appears in the opinion of the learned chief justice, the supreme court has jurisdiction, in damage suits, to pass on the facts as well as law, and hence may, of course, enforce a *remittitur* of damages or an *additur*, as the facts may appear to the court to demand: *Donnell v. Sandford* (1856), 11 La. Ann. 645; *Caldwell v. Railroad* (1889), 41 La. Ann. 624.

The value of the New Hampshire decision, mentioned as authority on the point of discussion, has been already indicated by the quotation from the later case in that state.

The remarks quoted from the Wisconsin case should be read along with a later decision in the same state wherein the court, in declining to set aside a verdict for excess, remarked: "The rule firmly established in this court by numerous adjudications forbids any interference with the verdict for alleged excessiveness of damages." *Hinton v. Railroad* (1886), 65 Wis. 323, at p. 341.

But whatever be the value of those decisions in the states where they were rendered, the real point here is, what is the meaning of our own constitution and laws?

7. It may be thought by some that the interests of justice would be promoted by confiding to the

supreme and appellate courts the power to review the facts supporting every judgment, whether legal or equitable in nature.   But that suggestion furnishes no valid reason for the assumption of such a power.   Until it is confided to the court by the people, we should not reach out and seize it because we have been intrusted with the mighty power of construing the organic law.

A court should always be an exemplar of willing obedience to law.   Its first duty should be to uphold the constitution.   It should be no less ready to recognize the limitations on its own authority than to enforce the restraints of law upon others.

In Missouri, the trial courts are the final reviewing authorities on disputed issues of fact in law cases, and have been for many years.

After long experience with them, the people, in their latest constitution, have confirmed and continued them in that trust.   The responsibility for that part of the administration of justice rests on them, and not upon this court.

In my opinion the verdict under review can not lawfully be disturbed here on account of its amount; and the majority of this court, be it said with the greatest respect, have no constitutional warrant for the order which has compelled the plaintiff to give up a large part of the damages adjudged to him by the jury and the trial court.

The majority have taken this course without even discussing the question whether, in so doing, the plaintiff's right to a trial by jury has been violated.

But such a question of constitutional right can not thus be disposed of, without my earnest but respectful protest.

Hence my dissent is entered to the judgment announced by the majority of my brethren.

GANTT, J., (*dissenting*).—In *Gurley v. Railroad*, 104 Mo. 233, speaking in behalf of division number two of this court, as then constituted, I said: "One other point only remains to be noticed. If plaintiff is entitled to recover at all, the verdict herein is excessive. It is in evidence·that no bones were broken, no muscles destroyed. Plaintiff was able in eight or nine months to resume his work as a commercial traveler. We are asked by counsel to make the proper deduction, and they will remit. We are aware that this court has in cases heretofore indicated how much should be remitted; but, speaking for ourselves, we think that, whenever the verdict does not, upon its face, appear to be result of passion or prejudice it is wholly within the province of the jury; but when it does so appear, then it ought to be set aside. We have no scales by which we can determine what portion is just, and the result of reason, based upon the evidence, and what part is poisoned with prejudice and passion. We do not think it within our province to assess the damages. When we set aside any part of the verdict, we destroy its integrity, and we have no right to set ourselves up as triers of facts, and render another and different verdict. We think the only logical course in such cases is to let the verdict stand or set it aside as an entirety." 3 Graham and Waterman on New Trials, p. 1211.

These observations of mine are now disapproved. As the views I then expressed were the result of much consideration and not a mere passing theory, I trust I will be pardoned for not yielding them without giving, to some extent, the reasons which actuated me when I wrote that opinion. I dislike to appear tenacious of my own opinions when they conflict with those whose greater experience and much greater ability and learning command so much more respect, but I wish to dissent in a respectful way from their views in this case.

When I wrote the opinion in the *Gurley case*, I cited no authority and did not enter into any discussion of the principle announced in regard to a *remittitur*:

Of course, what I said then was with reference to *that* and *similar cases*, and not to that class of cases where the law fixes the measure of damages which is alike obligatory upon court and jury, and when the court requires the verdict to conform to that, no suitor can complain.

But when the damages are unliquidated, and there is no legal measure of damages, I still maintain that it is a question for the jury, and the court, even a *nisi prius* court, ought not to interfere, unless the verdict is the result of passion, prejudice or corruption, or evident mistake. In 1 Sutherland on Damages [2 Ed.], p. 947, the author says:

"It is the peculiar province of the jury to decide such cases under appropriate instructions from the court; and the law does not recognize in the latter the power to substitute its *own* judgment for that of the jury."

In *Goetz v. Ambs*, 22 Mo. 170, the verdict was for $2,000 for an assault and battery and this court on appeal set it aside because it was excessive. Upon a second trial, the verdict was for $3,000, and on a second appeal (27 Mo. 28) it was again urged the verdict was excessive. Judge RICHARDSON, speaking for the court said: "The general rule on this subject is well stated by Mr. Sedgwick in his work on Damages (p. 466) 'That, although the court are entirely satisfied that the damages are excessive and altogether beyond compensation for the actual loss sustained, they will not, on motion for a new trial, interfere with the finding, unless the verdict is so extravagant as to bear evident marks of prejudice, passion or corruption.' "

The learned author was evidently speaking of a *nisi*

*prius* court, and, if that court, with its exceptional advantages for seeing and hearing the witnesses, was restrained by this rigid rule, why should an appellate court without those opportunities act upon less.

In *Kennedy v. Railroad*, 36 Mo. 351, Judge WAGNER said: "The ground urged for reversal, that the damages are too large, is not good *here*. There was evidence to go to the jury, and where that is the case it is their peculiar province, under proper instructions from the court, to determine the amount. Before we are at liberty to interfere with a verdict, it must appear at first blush that the damages are flagrantly excessive, or that the jury have been influenced by passion, prejudice or partiality."

In *Graham v. Railroad*, 66 Mo. 536, Judge NORTON, for the whole court, said: "It is claimed the damages are excessive." After quoting the remark from *Kennedy v. Railroad*, *supra*, he said: "In the case before us, plaintiff's right to recover damages was clearly established, and it does not appear to us that they are so flagrantly excessive or that the sum assessed is so disproportioned to the injury as to bear marks of passion, prejudice or corruption on the part of the jury, and, *because we can not say this, the judgment can not be disturbed on the ground of excessive damages.*"

*Smith v. Railroad*, 92 Mo. 359, was placed squarely on the authority of *Miller v. Hardin*, 64 Mo. 545. No reference was made to the *Waldhier case. Miller v. Hardin* was an action of ejectment and the jury assessed no damages, but the circuit court, in rendering judgment, entered it up for $105 damages. The plaintiff discovered this and asked to remit all of said damages, and it was permitted, but neither of those cases meets the practice to which I am objecting, namely, *the enforced remittitur, or the alternative of a reversal.* My position is that our jurisdiction in these cases is

appellate and that we are not authorized to assess the damages in a case like this, and that we are utterly without the means to properly fix them.

As an original proposition, I recognize the force and logic of the position that, as an appellate tribunal, we have no right to pass upon any question of fact in an appeal from a law case, but this court has asserted this jurisdiction in similar cases, since *Lacky v. Lane*, 7 Mo. 220, and *McAfee v. Ryan*, 11 Mo. 364, under the constitution of 1820, and the people adopted the present constitution with our construction upon it; but I am unwilling to go further than to say that a verdict may be reversed when, upon the record, it appears to be the result of passion, prejudice, corruption or evident mistake.

The rule now announced by our learned chief justice and adopted by the court, in my opinion, goes further than any court in the country, and further, in my opinion, than warranted by the constitution of this state, or the great weight of decisions prior to the *Waldhier case*, justifies.

In *Worster v. Canal Bridge*, 16 Pick. 547, the supreme court of Massachusetts said: "In all cases where there is no rule of law regulating the assessment of damages, and the amount does not depend on computation, *the judgment of the jury* and not the opinion of the court is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case."

In the eighth edition of Sedgwick on Damages, vol. 3, sec. 1322, it is said, "the *usual* practice upon setting a verdict aside because it is excessive, is to order a *new trial*;" but *in some jurisdictions* the *remittitur* is permitted.

In *Coleman v. Southwick*, 9 Johns. 45, Chief Justice KENT said: "The damages * * * must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court can not undertake to draw the line; *for they have no standard by which to ascertain the excess.*"

In *Price v. Severn*, 7 Bing. 316, Chief Justice TINDAL said: "I am as little disposed as any man to interfere with the province of a jury, and I should not be induced to send a case down again for excessive damages, except where those damages are enormous and disproportionate. I consider them such in this case. * * * *The case, therefore, must go before another jury.*"

In *Whipple v. Cumberland Manufacturing Company*, 2 Story, 670-671, Judge STORY said: "In no case will the court ask itself, whether, if it had been substituted in the stead of the jury, it would have given precisely the same damages; but the court will simply consider, whether the verdict is fair and reasonable, and in the exercise of sound discretion, under all the circumstances of the case; and *it will be deemed* so, unless the verdict is so excessive or outrageous, with reference to those circumstances, as to demonstrate that the jury have acted against the rules of law, or have suffered their passions, their prejudices or their perverse disregard of justice to mislead them."

In *Blunt v. Little*, 3 Mass. 102, the same learned judge, while he permitted a *remittitur*, said, in so doing: "I have the greatest hesitation in interfering with the verdict, and in so doing, I believe that I go to the very limits of the law."

I could add a volume of similar. expressions from the opinions of judges whose names challenge our respect, but this will suffice to show that I was not without authority, when I said "that whenever the verdict does not, upon its face, appear to be the result of passion or prejudice, it is wholly within the province of the jury."

I did not then, nor do I now, say a court may not set aside a verdict, if it does appear to be the result of passion, prejudice or evident mistake or corruption, but it is only when it does so appear, that the court can interfere. My proposition was, that this court, under our constitution, had no right to substitute its verdict for that of a jury.

The constitution, section 28, article 2, declares, "the right of trial by jury, as *heretofore enjoyed*, shall remain inviolate." Whatever may be the opinion of lawyers and publicists upon the propriety of retaining the jury system, it is clear to me that it is the duty of this court to obey the constitution as it is.

If I understand the opinion of the majority of the court, it does not announce that a verdict which is poisoned with the element of passion, prejudice or corruption, can be cured by a *remittitur*, either in a trial or appellate court. If it does, then I think it altogether indefensible. Whenever it is conceded that passion or prejudice enters into the verdict, then no part of it ought to stand, for the palpable reason that it permeates and vitiates the whole verdict. The court can not say that, but for such undue feeling, any verdict at all would have been given against the defendant.

As said by the author in Sutherland on Damages, (2 Ed., vol. 1, pp. 951, 952, sec. 460) "there is an apparent departure from sound principle in this practice. The court concludes that the jury were influenced by passion or prejudice, or both, *because*

*they found such excessive damages;* and yet allow their finding, covering the major propositions of the case upon which damages are consequent, to stand. Why should a verdict be in part retained if the jury were really influenced by passion or prejudice? Where their estimate of damages is rejected and another substituted, is the latter a verdict?" *Koeltz v. Blackman*, 46 Mo. 320; *Loewenthal v. Streng*, 90 Ill. 74; *Railroad v. Cone*, 37 Kan. 578; 3 Sedgwick on Damages [8 Ed.], sec. 1322.

It seems too clear that the right to a jury trial presupposes, always, an *impartial* jury, and it must follow that a jury actuated by passion, prejudice or corruption is not such as is guaranteed by our charter.

The pith of the argument of my learned brother who wrote the opinion in this case, is that a verdict may be excessive, and yet not influenced by prejudice or passion. But if not influenced by prejudice or passion, how are we to account for this flagrant excess, except upon the other ground, of obvious mistake of duty. Why do we say it is excessive? It is not because it is so clearly unreasonable and unjust as to shock our sense of right and not such a verdict as just and impartial jurors ought to have returned.

But, taking the view that the verdict is not necessarily the result of passion or prejudice, this brings us to the proposition, how is this excessive verdict to be cured? By the appellate court which sees only the cold record, a body that has no opportunity of seeing the witnesses, or observing their manner, or by a new trial before another jury? How is this court to determine how much is just and how much unjust? The only answer I have seen is that contained in the opinion of the majority, viz: that "this court is constantly reversing these verdicts and it is in position to

know when a verdict in a given case is *beyond that usually allowed in such cases* and the defendant is entitled to the benefit of that knowledge." In other words I understand from this we are to strike a "*general average*" in these cases.

I submit, *first*, we have no right under our constitution to do this. It is the province of the jury in each case to assess the damages, and not the court. *Second.* This practice, to be logical, will drive us to the other extreme of "*increscitur*." If we are to cut down all the verdicts that appear to us to be above the general average, are we not bound to increase all those below the average to *the usual standard*? *Third.* But I maintain that the common law courts have never attempted, before, to average up verdicts. Chief Justice MANSFIELD, in *Hewlett v. Cruchley*, 5 Taunton 280–281, said: "I always have felt it, that it is extremely difficult to interfere and say when damages are too large." "You may take twenty juries, and every one of them will differ, from 2000 *l* down to 200 *l*." But he did not suggest that it was his function to strike the average for them. Nor will we be any better able than the jury to weigh the facts of each case and determine what is right. In the very nature of things there can be no average. The facts and circumstance of each case must determine it. What would be a large verdict for one person, would be very inadequate for another.

In *Nudd v. Wells*, 11 Wis. 415, the court said: "The practice of remitting where the illegal part is clearly distinguishable from the rest, and may be ascertained by the court *without assuming the functions* of the jury and substituting its judgment for theirs, is well settled. * * * But it ought not to be carried so far as to allow the court, when a jury has obviously mistaken the law, or the evidence, and rendered a ver-

dict which ought not to stand, to *substitute* its own judgment for theirs, and after determining upon the evidence what amount ought to be allowed, allow the plaintiff to remit the excess, and then refuse a new trial. There are authorities that would sustain *even this*, as *Collins v. Railroad Company*, 12 Barb. 492; and *Clapp v. Railroad Company*, 19 Barb. 461. But we are unable to see how such a practice can be sustained, in such cases as those were, *without doing* the very thing which they professed not to do; that is, allow the court to substitute *its own verdict* for a wrong verdict of the jury, and on the plaintiff's *accepting that, refusing a new trial."*

In *Vinalx v. Core*, 18 W. Va. 1, that court fully indorsed the above view of the supreme court of Wisconsin and reasserted the same doctrine in *Unfried v. Railroad*, 34 W. Va. 260; *Vaulx v. Herman*, 8 Lea (Tenn.) 683; *Thomas v. Womack*, 13 Tex. 580.

In *Railroad v. Hall*, 53 Ark. 7, the supreme court of Arkansas said: "In *Blunt v. Little*, 3 Mason, 102, Judge STORY says that a verdict for damages should not lightly be disturbed on the ground of excessiveness, and that, in permitting a *remittitur* where such excessiveness was the only error, he felt that he went to the limit of the law. And so we think. The case of *Railway v. Barker*, 39 Ark. 491, is certainly 'the limit of the law.' In this cause the jury had properly before them the plaintiff's expenses, his loss of time, his diminished capacity for labor, and his pain, anguish and suffering. The difficulties which would beset a court in determining the justness or excessiveness of a verdict based upon these premises alone would not be inconsiderable. But superadd the element of punitive damages erroneously allowed, and the process by which the court is to dissect the verdict, eliminate the error, *eliminate the excess of compensation* and settle upon the exact sum which plaintiff's case entitles him to have,

*'passeth all understanding.'* To *attempt* it, we think, would be a violation of the spirit of the constitution, which intends that *every* litigant shall have a trial of his cause before an impartial jury upon proper declarations of the law."

This is not a new question; it has been discussed in many of the states. The opinion of Judge BLACK contains a reference to those states where a *remittitur* has been allowed as a condition for refusing a new trial for excessive damages.

In *Railroad v. Harper*, 70 Georgia, 119, the cases were reviewed and the conclusion was reached that the trial court even had no right to impose such a condition as a reason for refusing a new trial.

It was well said by Judge HALL, that the power to control did not include the power to find a verdict. Said he: "Like the executive veto, it arrests, but does not, by its exercise, bestow the power to enact." It is a familiar principle that a court or other constituted authority may not do that, indirectly, which it is forbidden to do directly.

No amount of argument can disguise the fact that, if we assume to set aside verdicts in this manner and substitute our findings in lieu of the jury's, we have taken to ourselves the prerogative, that was confided, by the constitution and the statutes, to the jury. Nor am I able to see the consistency in setting aside the verdict of a jury, dictating a different finding, and yet hesitating when asked to instruct a jury as to the elements of damages because we would thereby be invading their province.

At one time I had thought I would not dissent in this case, but yield my assent because of the former decision of this court in *Furnish v. Railroad*, but when I consider that that decision did not constitute a rule of property and no vested right would be disturbed by

not adhering to it, and because I am convinced that, as judges, we ought not to assume the functions of a jury, and that it has from the organization of the state been considered the peculiar right of a jury to fix the amount of damages in a tort like this, I deem it my duty to say so now. It has been iterated and reiterated numberless times that "no measure can be prescribed in such cases except the enlightened consciences of impartial jurors." Have we concluded we will substitute the enlightened conscience of the judges of the appellate courts in lieu of that of the jury? It seems so to me, and for that reason I dissent from the practice.

It was a maxim of the common law, "that, with respect to the question of law, the jury must not respond, but only the judges, and as to questions of fact, the judges must not respond, but only the jury." Broom's Legal Maxims, 80; Coke on Littleton, 295*b*.

In *Rex v. Poole*, Lee's Cases, *temp.* Hardwicke, 28, it was said by Lord HARDWICKE: "It is of the greatest consequence to the law of England and to the subject that the powers of the judge and jury are kept distinct; that the judge determines the law, and the jury the fact; and if ever they come to be *confounded* it will prove the confusion and destruction of the law of England." SHERWOOD, J., concurs in these views.